IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


CAPITOL INDEMNITY CORPORATION,
an Arizona corporation,

              Plaintiff/Appellant,

              v.

ROBERT B. FLEMING and RHONDA
FLEMING, husband and wife; FLEMING
& CURTI, P.L.C.,

              Defendants/Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2 CA-CV 2001-0114
DEPARTMENT A

O P I N I O N


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20004182

Honorable Ted B. Borek, Judge

AFFIRMED

---

Jennings, Haug & Cunningham, LLP
  By William F. Haug and William F. Begley                    Phoenix
                          Attorneys for Plaintiff/Appellant

Chandler, Tullar, Udall & Redhair, LLP
  By Charles A. Davis                                    Tucson
                          Attorneys for Defendants/Appellees

---

F L Ó R E Z, Judge.

¶1     Capitol Indemnity Corporation, the surety for Anita Heller, a client of attorney Robert B. Fleming and conservator of an estate, filed an action against Fleming, his spouse, and Fleming's law firm (collectively, Fleming) for damages arising out of Fleming's alleged negligence in failing to act when Heller illegally used estate funds to make gifts and loans to her own children. Fleming filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6), Ariz. R. Civ. P., 16 A.R.S., Pt. 1. After a hearing, the trial court granted Fleming's motion and this appeal followed. We affirm.

## BACKGROUND

¶2     In reviewing the grant of a motion to dismiss a complaint, we assume the facts alleged in the complaint to be true and give plaintiffs the benefit of all inferences arising from those facts. *Botma v. Huser*, 202 Ariz. 14, 39 P.3d 538 (App. 2002). We will uphold a trial court's dismissal of a complaint "only if the plaintiff is not entitled to relief 'under any facts susceptible of proof under the claims stated.'" *Linder v. Brown & Herrick*, 189 Ariz. 398, 402, 943 P.2d 758, 762 (App. 1997), *quoting Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984).

¶3     In 1996, the Pima County Superior Court appointed Heller to serve as conservator of the estate of Pearl E. Bennett, an incapacitated person. The court required Heller to post a bond in the amount of $345,000. Capitol issued the bond under a suretyship agreement with Heller. In 1997, Heller retained Fleming to advise her on the duties of a conservator and to help her prepare and file annual accountings. Between her appointment in 1996 and her removal and criminal indictment in 1998, Heller used $235,561.03 of estate funds to make unauthorized gifts and loans to her children. Although Fleming documented these transactions in two annual

accountings he filed with the court, he allegedly did not alert Heller or the court about their impropriety. When Heller's financial misconduct was discovered, the court removed her as conservator and ordered her to reimburse the estate the full amount she had misappropriated. Heller was only able to repay $45,561.03 of the usurped funds. As surety, Capitol was then required to pay the remaining $190,000 owed.

¶4 Capitol alleged in its complaint that Fleming had owed a duty to it, as Heller's surety, as well as to Bennett, the estate's protected person. Capitol further alleged that Fleming had breached that duty when he failed to properly inform Heller that her actions were illegal and to notify the court of Heller's ongoing criminal misconduct. In its response to the motion to dismiss, Capitol advanced two theories in support of its claim. First, Capitol contended that it was entitled to sue Fleming directly under the principles outlined in *Fickett v. Superior Court*, 27 Ariz. App. 793, 558 P.2d 988 (1976). Second, and alternatively, Capitol claimed that it was entitled to be equitably subrogated to Bennett's right to sue Fleming for malpractice pursuant to A.R.S. § 12-1643(A). The trial court found that Capitol had no claim under either theory and granted Fleming's motion to dismiss.

**DISCUSSION**

**1. Direct Cause of Action**

¶5 Capitol first contends it "has a direct cause of action against Fleming for legal malpractice under the principles announced by this Court in *Fickett*." In *Fickett*, the conservator of an incompetent person's estate sued the attorney for the former guardian, alleging that the attorney had negligently failed to discover the guardian's scheme to misappropriate and convert

3

estate assets for his personal benefit. The conservator claimed that the attorney had owed a duty to the ward despite a lack of privity between the ward and the attorney.

¶6        In analyzing the conservator's claim, this court restated the general rule that an attorney is not liable for legal malpractice to parties other than the attorney's client absent collusion or fraud. *Fickett*; *see also* Restatement (Third) of the Law Governing Lawyers § 51 cmt. a (2000) (lawyer owes duty of care to nonclient only in "limited circumstances"). But, in *Fickett*, we created an exception to the general rule, concluding that the attorney had owed a duty to the ward and was liable for breach of that duty. We reached that conclusion after applying the following balancing test:

> [T]he determination of whether, in a specific case, the attorney will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injuries suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

27 Ariz. App. at 795, 558 P.2d at 990. We concluded that, "when an attorney undertakes to represent the guardian of an incompetent [person], he assumes a relationship not only with the guardian but also with the ward." *Id.* In an analogous case, we determined that the attorney representing the special administrator of a decedent's estate owed a fiduciary duty to the estate's beneficiary. *In re Estate of Shano*, 177 Ariz. 550, 869 P.2d 1203 (App. 1993). As a result, we concluded the beneficiary was entitled to object to the attorney's representation of the special administrator based on a conflict of interest. Neither *Fickett* nor *Shano*, however, suggests that Fleming owed a duty to a person other than his client and the protected person, the intended

4

beneficiary of his representation. Indeed, we recently clarified that "neither *Shano* nor *Fickett* established or recognized any duty an attorney owes to nonclients who are not, at least derivatively, intended beneficiaries of the attorney-client relationship." *Wetherill v. Basham*, 197 Ariz. 198, ¶36, 3 P.3d 1118, ¶36 (App. 2000).

¶7        In *Wetherill*, the parties' relationship was analogous to that of Fleming and Capitol. There, this court declined to impose on the attorney who had represented the cosettlor of a trust a duty to the disinherited former beneficiary. The attorney had no attorney-client relationship with the former beneficiary but had an attorney-client relationship with and owed a duty to the cosettlor, whose interests were adverse to the disinherited beneficiary. As noted above, we distinguished both *Fickett* and *Shano* because the disinherited heir in *Wetherill* was not the intended beneficiary of the attorney's services. Similarly, Capitol is not the intended beneficiary of Fleming's services; thus, Fleming did not owe a duty to Capitol.

¶8        Capitol also relies on *Paradigm Insurance Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 24 P.3d 593 (2001), as supporting its right to directly sue Fleming. Capitol argues that this case "falls squarely within the long line of precedent discussed in *Paradigm* and, consequently, Fleming owe[d] a duty to Capitol" that establishes its "right, as a 'nonclient,' to bring a direct action against Fleming for professional negligence." However, neither *Paradigm* nor any of the precedents on which it relied concerned the types of relationships that existed among the parties here.

¶9        Paradigm Insurance Company had issued a medical malpractice insurance policy to a physician who was later sued for medical malpractice. Paradigm assigned Langerman Law Offices to represent the physician in the malpractice action. Langerman allegedly failed to timely

5

discover the existence of a primary policy covering the physician, which compelled Paradigm, the excess carrier, to act as the physician's primary carrier and to settle the physician's claim within its own policy limits. After Paradigm terminated Langerman's representation of the physician, it refused to pay Langerman the attorney's fees incurred in representing the physician. Langerman sued Paradigm for its fees, and Paradigm counterclaimed for negligence. The trial court granted summary judgment in favor of Langerman, holding that the attorneys had owed no duty of care to the insurer and could not be held liable for negligence that had injured Paradigm but not the physician.

¶10        Our supreme court held that, "when an insurer assigns an attorney to represent an insured, the lawyer has a duty to the insurer arising from the understanding that the lawyer's services are ordinarily intended to benefit both insurer and insured." *Id.* at ¶29. In analyzing the relationships among the parties and determining an attorney's duty to a nonclient, the supreme court relied on the following language from the Restatement of the Law Governing Lawyers § 51(3):

> "[A] lawyer owes a duty of care . . . to a nonclient when and to the extent that:
>
> (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;
>
> (b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and
>
> (c) the absence of such a duty would make enforcement of those obligations to the client unlikely."

*Paradigm*, 200 Ariz. 146, ¶23, 24 P.3d 593, ¶23.

¶11 Here, subsections (a) and (c) do not apply to the relationships among Capitol, Heller, and Fleming. Applying subsection (a), there is no assertion in the complaint that the primary objective of Fleming's representing Heller was to create any benefit to the nonclient, Capitol. Instead, Heller retained Fleming's services after contracting with Capitol and did so for her own benefit—to have him advise her and oversee the annual accountings. Nothing in the complaint suggests that Heller was motivated by any intent that Fleming's representation should extend to or benefit the surety. And even if Heller retained Fleming with that motive, there is no evidence Fleming knew she intended that result. Thus, the first criterion is not satisfied. *See* Restatement § 51(3)(a).

¶12 As to subsection (c), it is doubtful that the absence of a duty on Fleming's part to protect Capitol would have made enforcement of Fleming's obligations to Heller any less likely. *See* Restatement § 51(3)(c). Subsection (b) is more difficult to assess because it is unclear, based on this limited record, how imposing a duty of care on Fleming to protect Capitol's interests could have impaired Fleming's ability to fulfill his obligations to Heller. Even if it did not, however, the existence of this element alone is insufficient. *See* Restatement § 51(3)(b). Thus, Capitol failed to satisfy the test on which the supreme court relied in *Paradigm*.

¶13 *Paradigm*, then, does not support imposing a duty on Fleming in favor of Capitol. The relationships among the parties in *Paradigm* differed fundamentally from the relationships among the parties here. Capitol did not assign Fleming to represent Heller, as did the insurer in *Paradigm*. In fact, there is no statement in the complaint that any relationship existed between Capitol and Fleming. Nor is there any evidence of an understanding that Fleming's legal services

7

had been intended to benefit both Heller and Capitol, an intent from which a duty could have arisen. *See Paradigm.*

¶14        We have not found, and neither party has cited, any Arizona case holding that the attorney for a conservator owes a fiduciary duty to the conservator's surety. The cases on which Capitol relies do not support its contention that it has a direct cause of action against Fleming under the circumstances here. Additionally, we agree with Fleming that Restatement § 51(4), which addresses the duty an attorney for a fiduciary may owe in certain circumstances to third parties, did not impose a duty on Fleming for the benefit of Capitol. Therefore, the trial court did not err in dismissing Capitol's complaint pursuant to Rule 12(b)(6). Ariz. R. Civ. P.

**2.  Equitable Subrogation**

¶15        Capitol argues in the alternative that the doctrine of equitable subrogation, codified in § 12-1643(A), entitles it to be subrogated to the rights Bennett held to sue Fleming for malpractice. Capitol asserts that, as surety for Heller, it "has the right to exercise all rights of the creditor once a judgment rendered against the principal has been paid." Section 12-1643(A) provides:

> When a person who is surety on an undertaking is compelled to pay a judgment or part thereof . . . such judgment shall not be discharged by such payment but . . . shall be considered as assigned to the surety together with all rights of the creditor thereunder to the extent of the payment made by the surety, and interest thereon.

Here, the principal is Heller, the creditor is Bennett, and the surety is Capitol. Accordingly, under § 12-1643(A), Capitol may be entitled to assignment of the order requiring Heller to reimburse the estate to the extent of the payment it made to the estate on Heller's behalf. However, that Capitol is entitled to be assigned Bennett's right to collect from Heller does not

8

mean that Capitol is also entitled to be subrogated to Bennett's right to sue Fleming directly for legal malpractice.

¶16 Moreover, Capitol's contention that it is entitled to equitable subrogation of Bennett's claim against Fleming has another impediment. Although we recognize that assignment and subrogation are not identical legal principles,[1] they are sufficiently similar for us to conclude that, in Arizona, legal malpractice claims are not subject to subrogation, just as they are not subject to assignment. *Botma* (affirming dismissal of legal malpractice claim packaged with bad faith claim against insurance carrier because Arizona prohibits assignment of legal malpractice claims); *Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 140, 927 P.2d 796, 800 (App. 1996) ("[A] cause of action for legal malpractice cannot be assigned.").

¶17 In reaching that conclusion, we have found instructive, as did the trial court, *Fireman's Fund Insurance Co. v. McDonald, Hecht & Solberg*, 36 Cal. Rptr. 2d 424 (Ct. App. 1994). There, insurers settled a lawsuit brought by a group of homeowners against their insureds, developers of the plaintiffs' residences, for allegedly misrepresenting numerous facts in selling the residences. The developers sued their attorneys, alleging they had caused the misrepresentations to be made. When the insurers joined the lawsuit as plaintiffs under a theory of subrogation, the attorneys successfully demurred on the ground that California law prohibits assignment of legal malpractice actions and, thus, precluded subrogation of the legal malpractice action. The

---

[1]Although statute section headings are not law, A.R.S. § 1-212, they can help to resolve ambiguities. *Florez v. Sargeant*, 185 Ariz. 521, 917 P.2d 250 (1996). The heading of A.R.S. § 12-1643(A) denotes that the section deals with subrogation while the text itself speaks of assignment. We find no significant distinction between subrogation and assignment here.

9

California Court of Appeal affirmed, citing the following public policy reasons for prohibiting the assignment of legal malpractice claims:

> "Assignability would encourage commercialization of claims, and would force attorneys to defend themselves against persons to whom no duty was ever owed. Moreover, the legal profession is debased by such commercialization, because it could (1) encourage unjustified lawsuits; (2) generate increased malpractice lawsuits, burdening the profession, the court system and (to the extent malpractice premiums would inevitably rise and be passed to the consumers) the public; and (3) promote champerty. Assignability could conceivably reduce the public's access to legal services, since the ever present threat of assignment by irresponsible clients (seeking quick financial gain) could cause lawyers to evaluate more selectively the desirability of representing a particular client."

36 Cal. Rptr. 2d at 427, *quoting Kracht v. Perrin, Gartland & Doyle*, 268 Cal. Rptr. 637, 640 (Ct. App. 1990). Similar public policy considerations underlie Arizona's rule prohibiting assignment of a legal malpractice claim. *See Botma*; *cf. State Farm Fire & Cas. Co. v. Knapp*, 107 Ariz. 184, 185, 484 P.2d 180, 181 (1971) (declining to lift the lid "'on a [P]andora's box crammed with both practical and legal problems'" by allowing assignment of personal injury and medical payments claims), *quoting Travelers Indem. Co. v. Chumbley*, 394 S.W.2d 418, 425 (Mo. Ct. App. 1965); *Lingel v. Olbin*, 198 Ariz. 249, 8 P.3d 1163 (App. 2000) (claim for wrongful death not assignable); *Lo Piano v. Hunter*, 173 Ariz. 172, 840 P.2d 1037 (App. 1992) (exploring public policy rationale for barring assignment of personal injury claims).

¶18        In *Fireman's Fund*, the California Court of Appeal further explained that, even though subrogation and assignment have some differences, "'each operates to transfer from one person to another a cause of action against a third, and the reasons of policy which make certain causes of action nonassignable would seem to operate as forcefully against the transfer of such

causes of action by subrogation.'" 36 Cal. Rptr. 2d at 427, *quoting Fifield Manor v. Finston*, 354 P.2d 1073, 1077 (Cal. 1960); *see also Knapp*, 107 Ariz. at 185, 484 P.2d at 181 ("[S]ubrogation amounts to an assignment."). We agree that the public policies that prohibit assignment of a legal malpractice claim in Arizona also prohibit equitable subrogation of a legal malpractice claim. For the same reasons as did the court in *Fireman's Fund*, we decline to grant Capitol a right to be subrogated to Bennett's legal malpractice claim against Fleming. *See Kiley*. Thus, the trial court correctly refused to permit Capitol to proceed against Fleming under the doctrine of equitable subrogation.

## CONCLUSION

¶19    Having failed to establish the existence of a legal relationship and a concomitant duty owed it by Fleming, Capitol has no claim against Fleming and his firm. *See Linder*. Thus, we affirm the trial court's granting of Fleming's motion to dismiss the complaint.

_____
                                   M. JAN FLÓREZ, Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Presiding Judge



_____
JOSEPH W. HOWARD, Judge

11