**ESSEX INSURANCE COMPANY, a Delaware corporation, Plaintiff,**

v.

**Cameron W. TYLER, Esquire; and Cameron W. Tyler & Associates P.C., Defendants.**

No. CIV. 02–B–831(MJW).

United States District Court, D. Colorado.

March 22, 2004.

John W. Grund, Della S. Nelson, Grund & Nelson, P.C., Martha C. Ferris, Lambdin & Chaney, LLP, Denver CO, for Plaintiff.

Troy Robert Rackham, McConnell, Siderius, Fleischner, Houghtaling & Craigmile, LL, Dale A. Gaar, Dale A. Gaar, PC, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

This case is before me on Defendants Cameron Tyler, Esq. and Cameron W. Tyler & Associates P.C.'s Motion to Dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Oral arguments would not materially assist in the determination on this motion. After consideration of the motions and the case file, I GRANT Defendants' motion.

### I. Background

Plaintiff, Essex Insurance Company, filed an Amended Complaint, based on diversity jurisdiction, against Defendants, an attorney practicing in Colorado and his law firm. The complaint sets a forth claims related to Defendants' representation of Fleet Car, L.L.C., and its driver, Glen Taylor, who were insured by Plaintiff under an excess liability insurance policy, related to a 1996 automobile accident in which the driver hit a pedestrian. After a trial in 2000, the jury returned a verdict of $300,000 in favor of the pedestrian. The pedestrian was found to be 33% negligent. Plaintiff's insured were deemed to be 67% responsible. As the excess insurer, Plaintiff paid the pedestrian $237,813.66.

Plaintiff now brings this suit on the theory that it is equitably "subrogated to the rights of its insureds," Fleet Car and its driver, for Defendants' alleged professional negligence and breach of fiduciary duty. In its amended complaint, Plaintiff has alleged that Defendant Tyler owed a duty to Fleet Car and its driver; that he acted below the standard of care by failing to file vital pleadings and failing to adequately protect against surprise testimony; and that, as a result of this negligence, Plaintiff, as a subrogee, incurred monetary losses, including payment of the judgment. Plaintiff also alleges that Defendant Tyler breached his fiduciary duty of "undivided loyalty" to Fleet Car by creating "circumstances that adversely affected the interests of Fleet Car" and by his representation of the driver. As a result, Plaintiff, as a subrogee, alleges it incurred monetary losses. Plaintiff is seeking the $237,813.66 it paid in the underlying lawsuit, as well as its attorney fees, prejudgment interest and costs.

### II. Fed.R.Civ.P. 12(b)(6)

Under Fed.R.Civ.P. 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can plead no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A claim may be dismissed either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim. Fed. R.Civ.P. 12(b)(6); Morey v. Miano, 141 F.Supp.2d 1061, 1062 (D.N.M.2001).

In evaluating a Fed.R.Civ.P. 12(b)(6) motion to dismiss, "all well–pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." Wildwood Child & Adult Care Food Program, Inc. v. Colorado Dep't of Pub. Health & Env't, 122 F.Supp.2d 1167, 1170 (D.Colo.2000).

### III. Analysis

Defendants first assert that an attorney-client relationship is a necessary element to prove both legal malpractice and breach

of fiduciary duty claims. It contends that absent allegations of fraud or maliciousness towards the third party, which have not been raised here, and because Plaintiff has not and cannot allege such a relationship, it has failed to state a claim upon which relief can be granted. Defendants further argue that Plaintiff has failed to state a claim because Colorado law prohibits the assignment of legal malpractice claims and equitable subrogation, as is applicable here, is nothing more that an assignment of such claim.

Plaintiff argues, however, that it is not claiming recovery based on an attorney-client status, but rather on the basis that it is equitable subrogated to the rights of its insureds. *See Mid–Century Ins. Co. v. Travelers Indem. Co. of Ill.*, 982 P.2d 310, 315 (Colo.1999) (under equitable subrogation, a party secondarily liable who has paid the debt of the party who is primarily liable may institute a recovery action in order to be made whole). Plaintiff also contends that although Colorado law does not allow the assignment of legal malpractice claims, it does not follow that Colorado law prohibits an excess insurer's equitable subrogation claim against the insured's counsel. *See Western Cas. & Sur. Co. v. Bowling*, 39 Colo.App. 357, 565 P.2d 970, 971 (1977) ("[s]ubrogation presupposes an actual payment and satisfaction of a debt or claim to which the party paying is subrogated, although the remedy is kept alive in equity for the benefit of the payor, while the assignment necessarily contemplates continued existence of the debt or claim assigned").

The parties have not referred me to, nor has my research revealed, Colorado authority that addresses specifically the issue whether an excess insurer can pursue professional malpractice-based claims against its insureds' attorney based on a theory of equitable subrogation. As a result, I must predict how the Colorado Supreme Court would rule. *See Boehme v. U.S. Postal Serv.*, 343 F.3d 1260, 1264 (10th Cir.2003) (*citing FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir.2000)).

■ Colorado case law is clear that, as a general rule, most legal malpractice claims must be predicated on the existence of an attorney-client relationship absent allegations of fraud or maliciousness. *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.*, 892 P.2d 230 (Colo. 1995); *Brown v. Silvern*, 45 P.3d 749, 752 (Colo.App.2001). In Colorado, an attorney retained by the insurance carrier owes a duty to the insured only; there is no attorney-client relationship between an insurance carrier and the attorney it hires to represent the insured. *See generally CBA Ethics Committee, Formal Op.* 91 (1993).

In *Glover v. Southard*, 894 P.2d 21, 23 (Colo.App.1994), the Court noted that an attorney's liability to third parties is strictly limited, and that such a rule:

> rests upon three public policy bases: the protection of the attorney's duty of loyalty to and effective advocacy for his or her client; the nature of the potential for adversarial relationships between the attorney and third parties; and the attorney's potential for unlimited liability if his duty of care is extended to third parties.

*Id.* The Court of Appeals noted that although the scope of attorney malpractice liability has been extended to non-client third parties under a few narrow exceptions, it declined to impose a duty of care upon lawyers in favor of beneficiaries named in testamentary instruments that the attorney drafted based on these policy considerations. *Id.* at 24; *see also Zimmerman v. Dan Kamphausen Co.*, 971 P.2d 236 (Colo.App.1998); *Turkey Creek, L.L.C. v. Rosania*, 953 P.2d 1306 (Colo. App.1998); *Shriners v. Southard*, 892 P.2d 417 (Colo.App.1994).

In *Roberts v. Holland & Hart*, 857 P.2d 492, 495 (Colo.App.1993)(*cert. denied* Aug. 30, 1993), the Court of Appeals held that the assignment of legal malpractice claims is prohibited under Colorado law based on public policy considerations. The Court ruled that such an assignment involves matters of personal trust and personal service, and permitting the transfer of such claims would undermine the important relationship between an attorney and client. *Id.* The *Roberts* Court relied upon the rationale set forth in *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal. Rptr. 83 (1976), which stated that the assignment of such claims could relegate the legal malpractice action to the market place, resulting in the encouragement of "unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers." *Roberts*, 857 P.2d at 495–96. Such regime would "place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client." *Id.* at 496. Finally, the Court expressed concern that "an attorney's duty of loyalty to his client could be compromised by anticipating an assignment of possible legal malpractice claims." *Id.; see also Brown v. Gray*, 227 F.3d 1278, 1294 (10th Cir.2000) (acknowledging the validity of the public policy concerns); *In re Porter McLeod, Inc.*, 231 B.R. 786, 800 (D.Colo.1999)(same); *New Hampshire Ins. Co., Inc. v. McCann*, 429 Mass. 202, 707 N.E.2d 332, 335 (1999)(surveying the policy considerations of numerous jurisdictions related to the assignability of legal malpractice claims).

Plaintiff asserts, however, that Colorado law would permit legal malpractice claims by excess insurance carriers based on the policy that equitable subrogation prevents double recovery by an insured and it requires that wrongdoers bear the ultimate expense. In *Western Casualty & Surety Co. v. Bowling*, 565 P.2d at 971, the Colorado Supreme Court ruled that, prior to the Colorado No–Fault Act, an insurance carrier could seek reimbursement from its insured for medical payments paid under a *contractual* subrogation agreement because such an agreement was not an assignment of a claim for personal injuries. But no such agreement exists here.

In *Blue Cross of Western New York v. Bukulmez*, 736 P.2d 834, 841 (Colo.1987), the Colorado Supreme Court noted, with regard to double recovery of no-fault insurance benefits, that the public policy of New York—which is similar Colorado's—is that "[s]ubrogation is the principle which exists to prevent double recovery on the part of an insured and to compel the wrongdoer to bear the ultimate costs." *See also United Sec. Ins. Co. v. Sciarrota*, 885 P.2d 273, 277 (Colo.App.1994)("subrogation is a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it"). Based on this rationale, Plaintiff contends that Colorado clearly recognizes the public policy consideration that equitable subrogation should be applied to prevent injustice and shift the economic burden to the legally responsible party even where, as here, the claim is for legal malpractice against its insured's attorney.

In addition, Plaintiff refers me to numerous cases from other jurisdictions which allow for subrogation of legal malpractice claims, even when it may not allow for the assignment thereof. *See e.g. Ohio Cas. Ins. Co. v. Southland Corp.*,

1999 WL 236733 (E.D.Pa.1999); *Allstate Ins. Co. v. American Transit Ins. Co.,* 977 F.Supp. 197, 200 (E.D.N.Y.1997); *American Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d 480 (Tex.1992); *Atlanta Intern. Ins. Co. v. Bell,* 438 Mich. 512, 475 N.W.2d 294, 299 (1991). Plaintiff relies upon *National Union Ins. Co. v. Dowd & Dowd, P.C.,* 2 F.Supp.2d 1013 (N.D.Ill. 1998), for the proposition that although safeguarding the personal nature of the attorney-client privilege is important, shifting the economic burden to the responsible party by allowing equitable subrogation in this case is the more important policy concern. In weighing the policy considerations, the *Dowd* court predicted that the Illinois Supreme Court "would recognize that it would be inequitable to place the burden of legal malpractice upon the excess insurer, allowing a negligent attorney to escape the consequences of his misconduct, merely because the insured lacks the economic incentive to sue." *Id.* at 1024. Based on Illinois' liberal application of the doctrine of equitable subrogation, the court predicted that the Illinois Supreme Court would "conclude that an excess insurer should be allowed to assert a legal malpractice claim against its insured's defense attorney under the doctrine of equitable subrogation." *Id.* at 1027.

Plaintiff further asserts that the policy concerns express by the Colorado Courts in the context of assignment and third-party legal malpractice claims, are not applicable here. Specifically, Plaintiff contends that: the attorney-client relationship would not be materially effected; there would be no influx of legal malpractice claims by relative strangers because the risk of being sued for malpractice by an excess carrier is no different than being sued by his insured if the insured had not carried the excess coverage; and, because this case involved a judgment rendered by a verdict, as opposed to a settlement, allowing subrogation would not, in this case,

increase the risk that excess carriers will sue for malpractice when they perceive that the settlement is unreasonable.

■ However, although the Colorado Supreme Court has noted that subrogation exists to prevent double recovery on the part of an insured and to compel the wrongdoer to bear the ultimate costs, it is also clear that the Colorado has limited most legal malpractice claims, absent allegations of fraud or maliciousness, to claims grounded on the existence of an attorney-client relationship. *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A., supra.* Furthermore, the Court of Appeals clearly prohibits the assignment of legal malpractice claims on the policy interests of the "highly confidential and fiduciary relationship existing between attorney and client" and the compromised duty of loyalty to the attorney's client based on the anticipation of "possible legal malpractice claims" by third parties. *Roberts v. Holland & Hart,* 857 P.2d at 495. *See also Capitol Indem. Corp. v. Fleming,* 203 Ariz. 589, 58 P.3d 965, 969 (Ct.App. 2002) (assignment and subrogation are sufficiently similar to rule that legal malpractice claims are not subject to subrogation, because they are not subject to assignment in Arizona); *National Union Ins. Co. v. Dowd & Dowd, P.C.,* 2 F.Supp.2d at 1023 n. 10.

■ I conclude that the Colorado Supreme Court, if presented with issue, would follow the policy concerns related to the limitation of non-client third-party claims of legal malpractice and the prohibition of the assignment of such claims under Colorado law, and would proscribe professional malpractice-based claims by excess insurers based on a theory of equitable subrogation. *See, e.g., Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 107 (2d Cir. 1991)("we are persuaded that the Connect-

icut Supreme Court would not permit a subrogee excess insurer to file legal malpractice claims against the insured's attorney"). As a result, I dismiss with prejudice Plaintiff's claims because it asserts a legal theory not cognizable as a matter of law under Fed.R.Civ.P. 12(b)(6).

Accordingly, IT IS ORDERED that Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED, and Plaintiff's case is DISMISSED.