**STATE FARM FIRE AND CASUALTY COMPANY, as subrogee of Running Bear Homeowners Association, Plaintiff–Appellant,**

v.

**Robert G. WEISS, Esq. and Weiss and Van Scoyk, LLP, Defendants– Appellees.**

No. 06CA2634.

Colorado Court of Appeals, Div. II.

Sept. 4, 2008.

Law Office of Roger Moore, Dwight L. Pringle, Roger Moore, Brandon M. Selinsky, Denver, Colorado, for Plaintiff–Appellant.

McConnell Siderius Fleischner Houghtaling & Craigmile, LLC, Traci L. Van Pelt, Troy Rackham, Jared C. Lockwood, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROY.

State Farm Fire and Casualty Company (the insurer) appeals the order dismissing its legal malpractice claim against Robert G. Weiss and Weiss and Van Scoyk, LLP (collectively, the attorney). We affirm and remand for further proceedings.

The attorney drafted the original association covenants governing Running Bear Homeowners Association (HOA). Under those covenants, unit owners were permitted to rent their units for periods as short as one night, and some did. The HOA desired to amend the covenants to limit rental periods to not less than thirty days and contacted the attorney for that purpose. The attorney advised the HOA that it could amend

its covenants without the consent of persons or entities holding liens on the individual units. This advice was apparently based on the misapprehension that provisions of the Colorado Common Interest Ownership Act, sections 38–33.3–101, to –319, C.R.S.2007, applied when, in fact, by means of the covenants the HOA had opted out of the Act.

A unit owner sued the HOA for lost rental income. The HOA's litigation counsel concluded that the original covenants did not permit amendment without the consent of the lien holders, or a super majority of them. Based on that conclusion, the HOA then settled with the homeowner for $52,000, which the insurer reimbursed under the HOA's insurance policy.

The insurer initiated an equitable subrogation action against the attorney on the theory of professional malpractice. The attorney filed a motion to dismiss under C.R.C.P. 12(b)(5), asserting that the insurer could not bring a professional negligence action when it was never his client. The insurer opposed the motion and submitted the HOA's waiver of its attorney-client privilege. The trial court granted the motion.

The attorney then moved for an award of attorney fees and costs pursuant to sections 13–17–201 and 13–16–113, C.R.S.2007, and C.R.C.P. 54(d) and 121. The insurer objected on the ground that the dismissal was based only on a public policy concern and requested a hearing. The trial court concluded that the award of attorney fees and costs was mandatory and ordered the insurer to request a hearing no later than February 16, 2007, if one was desired. The insurer filed a notice to set a hearing by telephone on February 27, 2007, which the trial court rejected as untimely and concluded that a hearing would not materially aid in the reasonableness determination. The trial court then awarded the attorney $4,708 in attorney fees and $199.41 in costs. This appeal followed.

## I.

The pivotal issue is whether an equitable subrogation action premised on a professional negligence claim against an attorney will lie. This is an issue of first impression in Colorado state courts, and we conclude that it will not lie.

We review de novo a trial court's dismissal of a claim under C.R.C.P. 12(b)(5). *Wagner v. Grange Ins. Ass'n,* 166 P.3d 304, 307 (Colo. App.2007). We accept all assertions of material fact in the complaint as true and view the allegations in the light most favorable to the plaintiff. *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 71 (Colo.2004). "A motion to dismiss is properly granted when the plaintiff's factual allegations cannot support a claim as a matter of law." *Id.*

### A. Colorado Law

Colorado law prohibits the assignment of legal malpractice claims. *Roberts v. Holland & Hart,* 857 P.2d 492, 495 (Colo. App.1993). In Colorado, unless it involves fraud or malice, a legal malpractice claim must be based on the existence of an attorney-client relationship between the plaintiff and the defendant. *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank. Denver,* 892 P.2d 230, 239 (Colo.1995). The prohibition on the assignment of legal malpractice claims rests on three public policy bases: protection of the attorney's duties of loyalty and effective advocacy to the client, the potential for conflicts of interest with third-party plaintiffs, and the potential for an attorney's unlimited liability to unknown third parties. *Glover v. Southard,* 894 P.2d 21, 23 (Colo.App.1994).

Subrogation is somewhat different from assignment, however. "Subrogation is a 'creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it.'" *Am. Family Mut. Ins. Co. v. DeWitt,* —— P.3d ——, ——, 2008 WL 451742 (Colo.App. 2008) (quoting *United Sec. Ins. Co. v. Sciarrota,* 885 P.2d 273, 277 (Colo.App.1994)). "Subrogation occurs when one person is substituted in the place of another with reference to a lawful claim. . . ." *Bainbridge, Inc. v. Travelers Cas. Co.,* 159 P.3d 748, 751 (Colo. App.2006) (quoting *Browder v. U.S. Fid. & Guar. Co.,* 893 P.2d 132, 136 n. 4 (Colo.1995)); *see also Black's Law Dictionary* 1467–68 (8th ed.2004). "Under the doctrine of equitable

subrogation, when an insurer has paid its insured for a loss caused by a third party, it may seek recovery from the third party." *Cont'l Divide Ins. Co. v. W. Skies Mgmt., Inc.*, 107 P.3d 1145, 1148 (Colo.App.2004). The insurer then stands in the shoes of its insured. *Id.* This prevents the insured from being unjustly enriched by recovering from both the insurer and the third party, and prevents the third party from escaping liability. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 833 (Colo.2004).

### B. Essex Ins. Co. v. Tyler

Although Colorado state courts have not addressed this subrogation question, in *Essex Insurance Co. v. Tyler*, 309 F.Supp.2d 1270 (D.Colo.2004), the United States District Court for the District of Colorado concluded that the Colorado Supreme Court would not permit an equitable subrogation claim based on an attorney's professional negligence for the same policy reasons that prohibit the assignment of such claims. There, the insurance company sued the attorneys retained to defend the insured for legal malpractice, alleging that they failed to file vital pleadings and to adequately protect against surprise testimony at trial. *Id.* at 1271. The insurance company argued that it was equitably subrogated to the rights of the insured by having had to pay a $237,000 judgment. *Id.*

The *Essex* court noted that Colorado case law is clear that most legal malpractice claims require an attorney-client relationship. *Id.* at 1272; *see Brown v. Silvern*, 45 P.3d 749, 752 (Colo.App.2001). It noted the policy concerns stated in *Glover*, 894 P.2d at 23, regarding duty, conflict of interest, and liability limitations that support a prohibition on the assignment of legal malpractice claims. *Essex*, 309 F.Supp.2d at 1272. The *Essex* court also analyzed *Roberts v. Holland & Hart*, 857 P.2d at 495–96, in which a division of this court held that the assignment of a legal malpractice claim would undermine the vital relationship between an attorney and client, unduly burden the justice system, and restrict the availability of competent legal services. *Essex*, 309 F.Supp.2d at 1273. The *Essex* court also noted that even when an insurance company hires an attorney to represent its insured, the attorney owes a duty only to the insured. *Id.* at 1272; *see* Colorado Bar Ass'n Ethics Comm., Formal Op. 91 (1993) (premised on Rules 1.7(b), 1.8(f), and 5.4(c) of the 1993 version of the Colorado Rules of Professional Conduct, which were superseded without apparent substantive change by the version of the Rules effective January 1, 2008).

The *Essex* court also analyzed case law from other jurisdictions that allow equitable subrogation of professional negligence claims against attorneys when assignment of those claims is prohibited. *Essex*, 309 F.Supp.2d at 1274; *see Ohio Cas. Ins. Co. v. Southland Corp.*, 1999 WL 236733 (E.D.Pa. No. 98–CV–6187, Apr. 22, 1999) (unpublished memorandum and order); *Nat'l Union Ins. Co. v. Dowd & Dowd, P.C.*, 2 F.Supp.2d 1013 (N.D.Ill.1998); *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480 (Tex.1992). The court concluded that those courts permitting equitable subrogation value the shifting of the economic burden to the responsible party over the protection of the attorney-client relationship. *Essex*, 309 F.Supp.2d at 1274. The *Essex* court concluded that if forced to elect between the preservation of the attorney-client relationship and the shifting of the economic burden to the responsible person, the Colorado Supreme Court would choose the former. *Id.*

### C. Other Jurisdictions

The majority of jurisdictions that have addressed this issue, ten of sixteen excluding *Essex*, prohibit the equitable subrogation of professional negligence claims against attorneys. The seven of these ten that prohibit assignment conclude that equitable subrogation is similar enough to assignment that the policies supporting a prohibition on assignments are equally applicable to equitable subrogation. *See Capitol Indem. Corp. v. Fleming*, 203 Ariz. 589, 58 P.3d 965, 969 (Ct.App.2002); *Great Am. Ins. Co. v. Dover, Dixon Horne, P.L.L.C.*, 456 F.3d 909, 912 (8th Cir.2006) (Arkansas law); *Fireman's Fund Ins. Co. v. McDonald, Hecht & Solberg*, 30 Cal.App.4th 1373, 36 Cal.Rptr.2d 424, 426–30 (1994); *Cont'l Cas. Co. v. Pullman, Comley, Bradley & Reeves*, 929 F.2d

103, 106–07 (2d Cir.1991) (Connecticut law); *Nat'l Union Fire Ins. Co. v. Salter,* 717 So.2d 141, 142 (Fla.Dist.Ct.App.1998); *Querrey & Harrow, Ltd. v. Transcont'l Ins. Co.,* 861 N.E.2d 719, 723–24 (Ind.Ct.App.2007), *opinion adopted,* 885 N.E.2d 1235 (Ind.2008); *Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson,* 250 Kan. 490, 827 P.2d 758, 765–66 (1992).

The remaining three find similar policy reasons for prohibiting equitable subrogation of such claims. *See Swiss Reinsurance Am. Corp. v. Roetzel & Andress,* 163 Ohio App.3d 336, 837 N.E.2d 1215, 1224 (2005) ("Ohio's zealous guarding of the attorney-client relationship compels a holding that equitable subrogation is not available"); *Am. Cont'l Ins. Co. v. Weber & Rose, P.S.C.,* 997 S.W.2d 12, 13 (Ky.Ct.App.1998) (allowing equitable subrogation "would be inimical to the preservation of traditional and longstanding concepts associated with attorney-client relationship"); *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir.1991) (in Louisiana, "[a]bsent privity of contract, an attorney may make himself personally liable to third parties only if he exceeds the limits of his agency").

The jurisdictions that allow equitable subrogation have chosen the shifting of responsibility for loss to the responsible attorney over the potential jeopardy to the sanctity of the attorney-client relationship. *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP,* 379 F.Supp.2d 183, 193–96 (D.Mass.2005) (finding that insurer and client interests were aligned and that client had waived its confidentiality privilege); *Allianz Underwriters Ins. Co. v. Landmark Ins. Co.,* 13 A.D.3d 172, 174–75, 787 N.Y.S.2d 15 (N.Y.App.Div.2004); *Ohio Cas. Ins. Co.,* 1999 WL 236733 (Pennsylvania courts elevate "policy of protecting clients' rights [to competent representation] over the policy of protecting the personal and confidential nature of the attorney-client relationship"); *Atlanta Int'l Ins. Co. v. Bell,* 438 Mich. 512, 475 N.W.2d 294, 298 (1991) ("to completely absolve a negligent defense counsel from malpractice liability would not rationally advance the attorney-client relationship"); *Am. Centennial Ins. Co.,* 843 S.W.2d

at 484–85 (under Texas law, finding no new burdens imposed and that attorneys should not be relieved of these obligations merely because the insurer rather than the client must pay); *Nat'l Union Ins. Co.,* 2 F.Supp.2d at 1022–23 (in Illinois, subrogation allows the insurer to enforce the duties the attorney already owes to the insured, who might have little incentive to sue because of the insurance coverage; plus the social cost of legal malpractice is best borne by the negligent attorney).

### D. Analysis and Conclusions

█ We agree with the analysis, conclusions, and public policy choice adopted by the court in *Essex.* We conclude that the differences between equitable subrogation and assignment are not sufficient to override the strong public policies in Colorado's jurisprudence protecting the sanctity of the attorney-client relationship from the interference and intrusion of third parties.

Those states in which assignment is prohibited on public policy grounds have determined that there is little difference between the assignment of a claim and the equitable subrogation of that claim. The subrogee intrudes as a stranger and jeopardizes the attorney-client relationship just as would an assignee.

█ Assignment is the voluntary transfer of some right or interest to another person. *Cont'l Cas. Co. v. Ryan Inc. Eastern,* 974 So.2d 368, 376 (Fla.2008). The pertinent differences between assignment and subrogation include the following: (1) assignment transfers the entire value of the claim, whereas subrogation transfers the claim only to the extent necessary to reimburse the subrogee; (2) assignees are typically voluntary investors, whereas subrogees, usually insurers, are obligated to pay the insured's obligation to a third party; and (3) assignment is an outright transfer of the claim, whereas subrogation entails a substitution of the subrogee for the subrogor. *Imel v. Travelers Indem. Co.,* 152 Ind.App. 75, 281 N.E.2d 919, 921 (1972).

These differences address the profit motive usually associated with an assignment.

While important, they do not address the interference with the attorney-client relationship.

 Negligence claims are premised on duty, breach of duty, and damages. *Franklin v. Wilson,* 161 Colo. 334, 336, 422 P.2d 51, 51 (1966). Equitable subrogation, while it does not create a new duty, expands those to whom the duty is owed and thereby impinges on the attorney-client relationship. In *Mehaffy,* the Colorado Supreme Court held that a "party must prove the existence of an attorney-client relationship between the complaining party and the lawyer in order to prevail on a claim of legal malpractice." *Mehaffy,* 892 P.2d at 239. The court held that professional negligence claims against attorneys are confined to attorney-client relationships and that attorneys do not owe duties of care to non-clients. *Id.* at 240. Here, the duty owed by the attorney at the time of representation was solely to the HOA; to expose him to liability to the insurer would expand those to whom a duty is owed.

Equitable subrogation creates a conflict of interest between the attorney and client. If subrogation is allowed, an attorney contemplating a settlement agreement for a client, knowing that the client will be reimbursed by an insurer, must also consider that the insurer, unhappy with the settlement or the manner in which the matter was handled, may sue the attorney for professional negligence. This creates a concurrent conflict of interest, and "a lawyer shall not [without the client's consent after consultation] represent a client if the representation involves" such a conflict, including "a significant risk that the representation ... will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Colo. RPC 1.7(b) (1993); *see also* Colo. RPC 1.7(a)(2), (b)(4) (2008) (the new rule is substantially identical but requires the client's consent to be in writing and contains additional exceptions not pertinent here).

In *Glover,* a division of this court affirmed the dismissal of a professional negligence claim against an attorney by the intended beneficiaries of a trust drawn up and amended by the attorney, stating, "it is in the public's best interest to protect attorneys from potentially unlimited liability to third parties whose interests may interfere with the attorney's ability to fulfill the duties of undivided loyalty and advocacy owed to his or her client." *Glover,* 894 P.2d at 24. The court continued, "Thus, in drafting testamentary instruments at the behest of a client, an attorney should not be burdened with potential liability to possible beneficiaries of such instruments." *Id.* at 25. Moreover, if equitable subrogation is prohibited when it creates a conflict of interest between the insurer and the insured, sensible policy requires that it also be prohibited when it creates a conflict of interest between attorney and client. *See Cont'l Divide Ins. Co.,* 107 P.3d at 1148.

Although the HOA waived its client confidentiality privilege here, we must also consider the effect of equitable subrogation on that aspect of the attorney-client relationship. Under the Colorado Rules of Professional Conduct, an attorney may reveal client information to establish a claim or defense or "to respond to allegations in any proceeding concerning the lawyer's representation of the client." Colo. RPC 1.6(c) (1993); *see also* Colo. RPC 1.6(b)(6) (2008). An attorney faced with an equitable subrogation claim based on his or her alleged professional negligence may face the necessity of revealing client confidences to provide an adequate defense, which would undermine a fundamental principle in the attorney-client relationship. Colo. RPC 1.6 cmt. (1993). Therefore, the threat of an equitable subrogation action erodes the trust necessary to a successful attorney-client relationship.

Finally, just as the assignment of legal malpractice claims does, equitable subrogation degrades the legal system. In *Roberts*, 857 P.2d at 495–96, a division of this court rejected the assignment of legal malpractice claims when it considered the consequences of such claims: (1) debasement of the legal profession; (2) unjustified lawsuits against attorneys; (3) increased legal malpractice litigation; (4) promotion of champerty; and (5) forcing attorneys to defend themselves against strangers. The division also recognized that the complications of such lawsuits would place an undue burden on the legal profession and the judicial system, resulting in restricted legal services, embarrassment of the attorney-client relationship, and imperilment of the sanctity of the confidential and fiduciary relationship between attorney and client. *Id.* at 496.

We foresee similar consequences if we allow insurers to bring equitable subrogation actions premised on professional negligence against attorneys. There is no question that allowing such claims will increase the number of lawsuits. This burdens both the legal profession and the justice system and would ultimately restrict the availability of competent legal services. While we recognize that insurance companies and ultimately the public will pay the cost, or the bulk of the cost, of this burden, protecting every attorney-client relationship must take precedence over allowing lawsuits against attorneys whose clients do not want to sue but their subrogees do.

Therefore, we conclude that the trial court properly dismissed the insurer's claim.

## II.

■■ The insurer also contends that its claim, as one for equitable subrogation, was not a claim in tort such that section 13–17–201 would mandate the award of attorney fees upon dismissal pursuant to C.R.C.P. 12(b)(5). This was not an argument raised before the trial court. "Arguments not raised before the trial court may not be raised for the first time on appeal." *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 340 n. 10 (Colo.2004); *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718,

721 n. 5 (Colo.1992). Therefore, we decline to consider it here.

## III.

■ The insurer finally contends that the trial court erred in not granting it a hearing on the reasonableness of attorney fees awarded to the attorney pursuant to section 13–17–201. We disagree.

We review for an abuse of discretion a trial court's refusal to enlarge the time within which to file pleadings. *See* C.R.C.P. 6(b)(2); *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 84 (Colo.2001). "A party seeking an enlargement of time within which to take a required action, delays beyond an as yet unextended deadline at its own peril." *Moyer v. Empire Lodge Homeowners' Ass'n*, 78 P.3d 313, 315 (Colo.2003).

Here, the insurer filed its notice to set a hearing regarding the reasonableness of the attorney fees and costs eleven days late and without moving for an extension of time in which to file. Nor did it plead excusable neglect to the trial court or to this court on appeal. Rather, the insurer argues that because it is entitled to a hearing and no prejudice arose because of its delay, the trial court erred in not granting the hearing. While we agree that justice is best served by deciding disputes on their merits, justice is not served by the disregard of court orders. Therefore, we find no abuse of discretion in the trial court's denial of a hearing on the reasonableness of attorney fees and costs.

## IV.

■ The attorney also requests an award of attorney fees incurred on appeal. Because he has successfully defended his C.R.C.P. 12(b) dismissal, he is entitled to recover reasonable attorney fees. *Wark v. Board of County Comm'rs*, 47 P.3d 711, 717 (Colo.App. 2002). We exercise our discretion pursuant to C.A.R. 39.5 and remand the case to the trial court for a determination of the attorney fees.

The order is affirmed, and the case is remanded for an award of reasonable attorney fees incurred on appeal.

**1070**

Judge BERNARD and Justice ROVIRA *, concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2007.