CHANDLER, Justice,
concurring in part and dissenting in part:
¶ 46. I concur with the plurality’s holding that, because Great American and Quintairos have no attorney-client relationship, Great American may not bring a direct action for legal malpractice against Quintairos. With respect, I dissent from the plurality’s holding that Great American may bring a legal-malpractice claim against Quintairos under the doctrine of equitable subrogation. Counsel hired by a primary insurer to defend the insured already has a duty of care toward the insured and the primary insurer. Moeller v. Am. Guar, and Liab. Ins. Co., 707 So.2d 1062, 1070 (Miss.1996). The practical effect of today’s decision is to impose a duty of care toward the excess insurer as well. This outcome has serious implications for defense counsel’s duties of loyalty and confidentiality. Further, the Court’s decision encourages attempts by excess insurers to shift losses to the insured’s defense counsel.
¶ 47. Subrogation is “the substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.” Home Ins. Co. v. Miss. Ins. Guar. Ass’n, 904 So.2d 95, 96 (Miss.2004) (quoting Black’s Law Dictionary 1158 (7th ed.2000)). The doctrine of equitable subrogation is based upon “justice and equity, and rests upon the principle that substantial justice should be attained regardless of form.” Oxford Prod. Credit Ass’n v. Bank of Oxford, 196 Miss. 50, 16 So.2d 384, 388 (1944). “It is a creature of equity, and is the mode which equity adopts to compel the ultimate pay *430 ment of a debt by one who, in equity and good conscience, ought to pay it.” As an equitable doctrine, subrogation is governed by equitable principles. Sadler v. Glenn, 190 Miss. 112, 199 So. 805, 307 (1940). “Subrogation cannot be invoked where it would violate sound public policy, or result in harm to innocent third parties.” Wells Fargo Bank, Minnesota, N.A. v. Commonwealth of Ky., 345 S.W.3d 800, 807 (Ky.2011). Further, “as an equitable doctrine, subrogation ‘aids the vigilant, and not the negligent.’ ” Id.
¶ 48. A majority of courts that have considered today’s question have rejected the course taken by the plurality. St. Paul Surplus Lines Inc. v. Remley, 2009 WL 2070779, *5 (E.D.Mo. July 13, 2009); State Farm Fire and Cas. Co. v. Weiss, 194 P.3d 1063 (Colo.Ct.App.2008); Querrey & Harrow, Ltd. v. Transcont. Ins. Co., 861 N.E.2d 719, 723-24 (Ind.Ct.App.2007); Swiss Reinsurance Am. Corp. v. Roetzel & Andress, 163 Ohio App.3d 336, 837 N.E.2d 1215, 1224 (2005); Capitol Indem. Corp. v. Fleming, 203 Ariz. 589, 58 P.3d 965, 969 (Ariz.Ct.App.2002); Am. Cont’l Ins. Co. v. Weber & Rose, P.S.C., 997 S.W.2d 12, 14 (Ky.Ct.App.1999); Nat’l Union Fire Ins. Co. v. Salter, 717 So.2d 141, 143 (Fla.Ct.App.1998); Fireman’s Fund Ins. Co. v. McDonald, Hecht & Solberg, 30 Cal.App.4th 1373, 36 Cal.Rptr.2d 424, 425 (1994); St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co., 937 F.2d 274, 279 (5th Cir.1991). As aptly stated by the Court of Appeals of Kentucky:
To [allow equitable subrogation] would in our judgment acknowledge a direct duty owed by the insured’s attorney to the excess insurer and would be tantamount to saying that insurance defense attorneys do not owe their duty of loyalty and zealous representation to the insured client alone. Such a holding would contradict the personal nature of the attorney-client relationship, which permits a legal malpractice action to accrue only to the attorney’s client.... Such a holding would also encourage excess insurers to sue defense attorneys for malpractice whenever they are disgruntled by having to pay within limits of policies to which they contracted and for which they received premiums. Were this to occur, we believe that defense attorneys would come to fear such attacks, and the attorney-client relationship would be put in jeopardy.
Am. Cont’l Ins. Co., 997 S.W.2d at 14 (quoting Am. Employers’ Ins. Co. v. Med. Protective Co., 165 Mich.App. 657, 419 N.W.2d 447, 448-49 (1987)). The court stated that “allowing excess insurers to maintain legal malpractice actions against insureds’ attorneys, based upon theories of equitable subrogation, would undermine this jurisdiction’s adherence to a view promoting the preservation of traditional attorney-client relationships.” Id.
¶ 49. The equities weigh against permitting an excess insurer to “step into the shoes” of the insured to instigate a legal-malpractice action against defense counsel hired by the primary carrier. Permitting equitable subrogation subverts the relationships imposed by Moeller on insureds, insurers, and defense counsel as well as defense counsel’s attendant duties of loyalty and confidentiality. Moeller, 707 So.2d at 1070. Defense counsel, already representing both the insured and insurer, -with a duty to remain alert to potential conflicts, will now face the additional threat of liability to a dissatisfied third-party excess insurer. But the interests of primary and excess insurers are distinct, because the excess insurer’s interest is to settle the claim within the limits of the primary policy, while the primary insurer’s interest may be to risk a trial. See Hartford Accident & Indem. Co. v. Foster, 528 So.2d 255, 263 (Miss.1988) (“settlement is only to *431 the carrier’s financial interest when the relationship between settlement offer and policy limits is mathematically favorable in the light of the probabilities of winning or losing the suit”). Allowing equitable sub-rogation will undermine the attorney’s ability to act solely in the interests of the primary insurer and the insured.
¶ 50. Also, allowing such an action will encourage an excess insurer, dissatisfied with the outcome of a settlement, to attempt to shift the loss to defense counsel despite the fact that the insured was satisfied with the outcome of the underlying case. Confronting this danger, the Court of Appeals of Colorado stated:
There is no question that allowing such claims will increase the number of lawsuits. This burdens both the legal profession and the justice system and would ultimately restrict the availability of competent legal services. While we recognize that insurance companies and ultimately the public will pay the cost, or the bulk of the cost, of this burden, protecting every attorney-client relationship must take precedence over allowing lawsuits against attorneys whose clients do not want to sue but their subrogees do.
Weiss, 194 P.3d at 1069. The availability of equitable subrogation will encourage excess insurers to shelve pending lawsuits and then sue or threaten to sue for legal malpractice if the outcome implicates the excess policy.
¶ 51. The Court’s recognition of equitable subrogation will undermine client confidences, because, ordinarily, a legal-malpractice plaintiff voluntarily may waive the attorney-client privilege by placing confidential matters at issue. See Century 21 Deep South Properties, Ltd. v. Corson, 612 So.2d 359, 374-75 (Miss.1992). Allowing a third-party excess insurer to “step into the shoes” of the insured client will permit a stranger to the attorney-client relationship to control the attorney-client privilege. This outcome casts uncertainty upon the attorney’s statutory duty to maintain client confidences, and undermines the sanctity of the attorney-client relationship, which “is one of special trust and confidence” between attorney and client. See Miss. Code Ann. § 73-3-37 (Rev.2012); Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay, 42 So.3d 474, 486 (Miss.2010).
¶ 52. Courts should not apply equitable subrogation if doing so would harm innocent third parties. Wells Fargo Bank, 345 S.W.3d at 807. Because this case involves a confidential settlement, it is foreseeable that equitable subrogation could prejudice the insured, Shady Lawn. A legal-malpractice case involves a “trial-within-a-trial test” in which the plaintiff attempts to prove that, but for the attorney’s negligence, the plaintiff would have succeeded in the underlying matter. Crist v. Loyacono, 65 So.3d 837, 842 (Miss.2011). Great American’s assertion of Shady Lawn’s legal-malpractice claim will force Shady Lawn to endure the “trial within a trial” in which the information it had believed was protected by the confidential settlement could be divulged.
¶ 53. Considerations of fairness dictate against allowing equitable subrogation. See Sadler, 199 So. at 307. Great American was on notice that its interests were at stake from the date it was notified that a lawsuit had been filed requesting damages in an amount that implicated the excess policy. Yet it chose not to protect and safeguard its interests by hiring independent counsel. Although the primary carrier controls the litigation, the excess carrier may protect its interests by hiring its own counsel to participate in the defense by monitoring the case and making suggestions as necessary. At the hearing on the motion to dismiss, Great American admit *432 ted that excess insurers routinely employ counsel to monitor cases defended by the primary insurer. Counsel for Great American even stated that his firm had been “called in by Great American” to help with such cases. But here Great American hired counsel only after it received Quin-tairos’s estimate of the new settlement value. Because subrogation aids the vigilant, not the negligent, equity is not served by rewarding Great American with a right of subrogation for its less-than-diligent response to the lawsuit. I would not permit Great American to proceed against Quin-tairos under the doctrine of equitable sub-rogation.