476 P.2d 533

The HOME INSURANCE COMPANY, a New York corporation, Appellant,

v.

BALFOUR–GUTHRIE INSURANCE COMPANY, Appellee.

No. I CA–CIV 1177.

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 16, 1970.

Rehearing Denied Dec. 18, 1970.

Review Granted Feb. 2, 1971.

Snell & Wilmer, by John E. Lundin, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, by Charles B. Burton, Phoenix, for appellee.

HAIRE, Judge.

This is an appeal by The Home Insurance Company (hereinafter sometimes referred to as the "defendant-insurer") from a judgment rendered against it in garnishment proceedings.

The basic facts necessary for determination of this matter are not in dispute. In the initial action giving rise to the garnishment proceedings, Peter and Gay Wray sought to recover damages for the loss of certain items of jewelry which they had delivered to Andre Fleuridas, Sr., d/b/a Andre Fleuridas Jewelry Company, for the purpose of repair. In that action, on December 22, 1967, the trial court entered a default judgment in favor of the Wrays and against the jeweler, Fleuridas. Shortly thereafter, on March 18, 1968, the Wrays[1] instituted the instant garnishment proceedings against Home Insurance, as insurer under a standardized jeweler's block policy issued to Fleuridas. Subsequent proceedings resulted in the filing on July 3, 1968, by the defendant-insurer of an answer to plaintiffs' tender of issues relating to the garnishment proceedings. By this answer, the defense raised was that the loss was not covered by the policy because of an "other insurance" provision contained therein.

On October 9, 1968, plaintiff moved for summary judgment. Thereafter, on October 21, 1968, the defendant-insurer moved to amend its answer to the tender of issues in order to set up a defense of "non-cooperation" under the policy on the part of its insured, Fleuridas, with respect to the principal action. On October 29, 1968, the trial court denied the defendant-insurer's motion to amend its answer, and thereafter the defendant-insurer also moved for summary judgment. On April 29, 1969, the trial court disposed of the conflicting motions for summary judgment by granting plaintiff's motion, and thereafter the defendant-insurer appealed.

■ We first consider appellant's contention that the trial court erred in denying its motion to amend its answer to the tender of issues. While Rule 15(a), Rules of Civil Procedure, 16 A.R.S. and the cases construing that rule make clear the mandate to freely grant leave to amend when justice so requires, such leave may be properly withheld within the discretion of the trial court in appropriate circumstances. One such circumstance occurs when the proffered amendment could not affect the outcome of the litigation, that is, when on its face it is legally insufficient. *See* Wilson v. Byrd, 79 Ariz. 302, 306, 288 P.2d 1079, 1082–1083 (1955). Plaintiff-appellee contends that the proffered amendment to set up a "non-cooperation" defense failed to state a legal defense and that therefore the trial court acted properly in denying the amendment.

■ There is no dispute that the action of Home Insurance's insured, Fleuridas, in refusing to make himself available for a deposition as demanded by the Wrays, led directly to the entry of a default judgment against him, with a resulting claimed liability of his insurer, the appellant. The law, moreover, is clear that a non-cooperation clause in an insurance policy, if properly drawn, will relieve an insurer of its indemnification

---

1. Pursuant to stipulation of the parties, and after commencement of the garnishment proceedings, the court entered an order substituting Balfour-Guthrie Insurance Company as plaintiff. Balfour had become subrogated to plaintiffs' rights against Fleuridas. This substitution of parties, except insofar as it indicates that the original plaintiffs had their own policy of insurance, is not pertinent to any issue on this appeal. In this opinion any reference to plaintiff or plaintiffs insofar as concerns facts occurring after the filing by the defendant-insurer of its answer to the tender of issues in the garnishment proceedings is intended to be a reference to Balfour.

obligation with respect to a non-cooperative insured. The precise question raised by the amendment proferred here, however, is whether the language of the particular clause relied upon in the policy under consideration is sufficient to create such a defense when applied to the alleged conduct of the above-mentioned insured, Fleuridas.

The clause relied upon, Insuring Condition 14, provides:

"14. The Insured, as often as may be reasonably required, shall exhibit to any person designated by the Company all that remains of any property herein described, and shall submit, and in so far as is within his or their power cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Company and subscribe the same; and, as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Company or any of its employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Company might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Company's liability."

A study of Insuring Condition 14 shows that the policy does require the insured's cooperation in assisting the insurer's investigation of the facts and circumstances surrounding a claim. However, nowhere does the policy purport to require the insured to cooperate in litigation and submit to the taking of his deposition upon penalty of forfeiting his indemnification protection under the policy. The appellant does not cite any authority which would uphold such forfeiture in the absence of a contractual provision. In our opinion Insuring Condition 14 is insufficient to support the amendment proposed by the defendant-insurer. In addition, here the defendant-insurer represented the defendant Fleuridas in the principal action and had full knowledge of his conduct in that litigation. Yet when it filed its answer to tender of issues in the subsequent garnishment proceeding, it did not allege or assert any claimed defense of "non-cooperation" by its insured, but rather chose to defend upon the basis that the loss was not covered (because of an excess clause) by its policy. Under all of these circumstances, we cannot say that the trial court abused its discretion in denying the motion to amend belatedly filed after the filing of plaintiff's motion for summary judgment.

■ A more serious and difficult question to resolve, however, is raised with respect to defense of non-liability because of an "other insurance" clause in the contract of insurance. This defense requires that the Court consider paragraph 3 and Insuring Condition 11 of the policy. Paragraph 3 delineates the classes of insured property as follows:

"3. The Property Insured is as Follows:

"(A) Pearls, precious and semi-precious stones, jewels, jewelry, watches and watch movements, gold, silver, platinum, other precious metals, and alloys and other stock usual to the conduct of the Insured's business, owned by the Insured;

"(B) Property as above described delivered or entrusted to the Insured by others who are not dealers in such property or otherwise engaged in the jewelry trade;

"(C) Property as above described, delivered or entrusted to the Insured by others who are dealers in such property or otherwise engaged in the jewelry trade, but only to the extent of the Insured's own actual interest therein because of money actually advanced thereon, or legal liability for loss of or damage thereto."

Insuring Condition 11 to the policy provides:

"11. It is understood and agreed that any insurance granted herein shall not cover *(excepting as to the legal liability of the Insured)*, when there is any other insurance which would attach if this policy had not been issued, whether such insurance be in the name of the Insured or of any third party. It is, however, understood and agreed, that if under the terms of such other insurance (in the absence of this policy) the liability would be for a less amount than would have been recoverable under this policy (in the absence of such other policy) then this policy attaches on the difference." (Emphasis supplied.)

Even where "other insurance" is available, the parenthetical exception set forth in the first sentence of the "other insurance" clause (Insuring Condition 11) makes appellant's policy *primary* insurance when insured property is lost or damaged where "the legal liability of the insured", is involved. Appellant contends that this exception refers only to property insured under subparagraph 3(C), because it is only this subparagraph which refers to the "legal liability" of the insured. The property here involved is subparagraph 3(B) property. Therefore, if appellant is correct, it would not be liable to plaintiff in these garnishment proceedings because of the existence of "other insurance" which under Insuring Condition 11 would relieve appellant of its primary coverage obligation. While at first blush appellant's contention has some attraction, we think it is an erroneous interpretation of the pro-

visions of the policy. In our opinion the "legal liability" exception in Insuring Condition 11 was intended to preserve primary coverage for the named insured for *all covered property loss or damage* for an amount at least equal to the insured's legal liability to the property owner for such loss or damage, whereas the sole purpose of the "legal liability" language used in subparagraph 3(C) was to limit the amount of coverage (whether primary or excess) *for that particular class of property* to an amount which might well be less than its actual full cash value. We think that this interpretation logically results from a consideration of the policy provisions as a whole.

The policy covers three different types of situations where the insured could have "legal liability" to some third party for loss or damage to property in the insured's possession. *First,* insofar as concerns property described in paragraph 3(B), the named insured, dependent upon the circumstances surrounding the loss or damage, might be legally liable under bailee-bailor principles to some customer or other person not a dealer who delivers or entrusts jewelry to the insured for sale, repair or some other purpose. *Second,* insofar as concerns property described in subparagraph 3(C), the named insured, again dependent upon the circumstances, might be legally liable to some dealer or other person engaged in the jewelry trade for such loss or damage. *Third,* under paragraph 6 of the policy, the insured might be legally liable, (for example, by reason of obligations imposed under his lease of the premises) to repair building damage which might be caused by the theft or attempted theft of covered personalty. However, we note that from the policy language it is clear that all of the coverage provided by paragraph 3 of the policy is "property" insurance, and not that type of insurance commonly referred to as "liability" insurance. Thus, the introductory language of paragraph 3 reads: "The Property Insured is as Follows:" Subparagraph (A) then describes specific types of

personal property. Subparagraphs (B) and (C) then commence with the language, "Property as above described", etc. In this context, it is logical that the language in paragraph 3(C) which refers to "legal liability" was not intended to convert the coverage to liability insurance, or to limit primary coverage to that class of property alone, but rather was intended to provide a limit on the *amount* of property insurance coverage otherwise provided, whether primary or excess.

Additional support for the foregoing interpretation arises from a consideration of the effect of Insuring Condition 9(A), which provides that " * * * the loss or damage shall be ascertained * * * according to * * * actual cash value. * * * " This general condition would appear to apply to all valuations in the absence of some more specific limitation. As to the property described in paragraph 3(A), there is no valuation limitation of any kind. Nor is there any specific valuation limitation as to the class of property described in paragraph 3(B). However, as previously noted, there is a very specific limitation on valuation of 3(C) property— only to the extent of the insured's legal liability for loss of or damage thereto. Since there is no specific limitation on valuation as to paragraph 3(B) property (the type of property here involved), it can be assumed that the parties intended that such property be insured to its full actual cash value whether the named insured was one hundred percent legally liable for the loss, or not at all legally liable therefor. If such was the intent, then there was no necessity to insert any limiting language concerning "legal liability" in paragraph 3(B), and its absence cannot be construed as indicating that the parties intended that the parenthetical language of Insuring Condition 11 was to apply only to subparagraph 3(C) property.

There is good reason why the jeweler might want coverage over and beyond, but including an amount to the extent of his legal liability on 3(B) property. By having the customer's property covered for its full value regardless of the jeweler's legal liability for its loss, he (the jeweler) would not run the risk of incurring the customer's ill will and consequent loss of trade which might well result from a not fully covered loss or damage to customer-owned property.

The construction urged by appellant would give the insured jeweler greater protection for a loss of property owned by another dealer than for property owned by a customer. We can think of no reason why a jeweler would want greater coverage for his legal liability to a dealer than for his legal liability to an ordinary customer. In any situation involving loss of property for which the insured would be legally liable to the owner, whether the owner be a customer or a dealer, primary coverage would be necessary so as to preclude the possibility of the insured having to ultimately pay the loss to the "other insurer" through the operation of subrogation principles.

For the foregoing reasons, we think it more reasonable that the intent was to give extra coverage to the customer's property, that is, coverage over and above, but including an amount equal to the legal liability of the jeweler, while limiting the amount of coverage of a dealer's property to an amount measured by the legal liability of the insured jeweler. As thus construed, the exception in the other insurance clause (Insuring Condition 11) must be held to refer to all described property losses to the extent of the insured's legal liability to the owner of that property. Where, as here, the loss or damage occurs through the fault of the insured so that the insured is liable, the parenthetical "legal liability" language of Insuring Condition 11 comes to the fore to protect the policy's primary insured, the jeweler.

Marshall v. World Fire & Marine Insurance Company of New York, 149 F.2d 902 (9th Cir. 1945) and Jewelers Mutual Insurance Company v. Balogh, 272 F.2d 889 (5th Cir. 1959) are the only two cases cited to us dealing with the "other insurance" clause in a standardized jeweler's

block policy. The exact issues here involved were not raised directly in either case. Dicta in Marshall and Balogh would support a finding that the parenthetical liability exception contained in the "other insurance" clause refers only to property described in paragraph 3(C). The reasoning contained in these cases, however, is in our opinion neither persuasive nor properly responsive to a fair construction of the clauses in question.

We therefore hold that the trial court was correct in its interpretation of the policy and that the policy provided primary coverage for the loss here involved.

The judgment of the trial court is affirmed.

· EUBANK, P. J., and JACOBSON, J., concur.