722 P.2d 286

**Barbara LA RAIA, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona In and For the COUNTY OF MARICOPA, and the Honorable John Sticht, a Judge thereof, Respondents.**

**No. CV–86–0099–SA**

Supreme Court of Arizona, En Banc.

July 17, 1986.

Law Offices of H. Richmond Fisher by H. Richmond Fisher, Phoenix, for petitioner.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Thomas A. McGuire, Phoenix, for real parties in interest.

FELDMAN, Justice.

Petitioner brings this special action [1] seeking relief from the trial court's order denying leave to amend her complaint. Petitioner argues that Arizona should recognize the tort of "intentional spoilation (sic) of evidence". We consider whether a tort-feasor has a duty to render aid to the victim of his tort and whether, if he fails to do so, he is liable for any subsequent exacerbation of injury. We have not previously considered these questions and therefore have accepted jurisdiction. *King v. Superior Court*, 138 Ariz. 147, 673 P.2d 787 (1983). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, A.R.S. § 12–120.24 and Rule 7, Ariz.R.P.Spec.Act., 17A A.R.S.

### FACTS

The facts of this case are compelling. Ms. La Raia (plaintiff) resided in an apartment project owned and operated by the real parties in interest, Friedkin/Becker, Inc. (defendant). Plaintiff had problems with roaches and asked the apartment manager to arrange for pest control service.

---

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action". *See* Rule 1, Arizona Rules of Procedure for Special Actions, 17A A.R.S.

Rather than calling the contract pest control company, the manager authorized the janitor, who was unlicensed and untrained, to spray plaintiff's apartment. He did so while plaintiff was away at work. Never having sprayed indoors before, he apparently saturated everything with pesticide. When she returned to her apartment, plaintiff noticed an overpowering, pungent odor. She contacted Ms. Adkins, the "leasing hostess" at the project, and advised her of the situation. Ms. Adkins visited the apartment, noticed the smell and found that her eyes had begun to water. She arranged for plaintiff to spend the night in another apartment.

Plaintiff became ill and asked the apartment manager for a list of the chemicals in the spray. The manager provided her with a partial list of the contents which omitted all toxic items. Thus, when plaintiff conveyed the information to her doctor and the pest control board, she was informed that none of the chemicals was toxic. Believing it was safe, plaintiff then reentered her apartment, only to become more seriously ill. Her condition worsened and she was hospitalized on December 13, 1982 at the poison control center at St. Luke's Hospital in Phoenix.

Staff from the poison control center telephoned the apartment manager to ask what chemicals had been used. Before returning the call from the poison control center, the manager ascertained that the pesticide can which the janitor had used was marked with a skull and crossbones and was "for outside use only". She also learned that the product had been used by mistake. The manager instructed the janitor to take the can and dispose of it off the property. She then had the janitor bring a different pesticide from the maintenance room. This product, "Blitz", was approved for indoor use but was not the spray used in plaintiff's apartment. The manager copied the list of ingredients from the "Blitz" can and gave that list to the poison control center.

Plaintiff was treated for carbamate exposure, the toxic ingredient in "Blitz". She was discharged from the hospital on December 16, 1982 and went back to her apartment. During the weeks which followed, she unsuccessfully attempted to rid her apartment of the smell. A friend who visited her noticed a smell similar to that of malathion or parathion, both of which are toxic organophosphates. Later tests performed on items taken from plaintiff's apartment revealed traces of diazinon, which is a toxic organophosphate.

After moving back to her apartment, plaintiff awoke every morning feeling nauseated, chilled and weak. She had bronchial congestion and difficulty in breathing. She was continually tired and found it impossible to work full time at her job. She finally moved into a new apartment on January 8, 1983, but was forced to throw away most of her possessions as they reeked of the pesticide.

Plaintiff sued for negligence. The physician at the poison control center testified on deposition that based upon the representation that Blitz had been used in plaintiff's apartment, the doctors had administered atropine, the treatment of choice for carbamate poisoning, but inappropriate for malathion, parathion and diazinon, organophosphate pesticides which are more toxic than carbamates. If he had known of plaintiff's exposure to organophosphates, the doctor would have administered the proper antidotes. Having reviewed the deposition testimony of Ms. Adkins (which revealed the facts related above), the doctor felt that the false information given the poison control center and the destruction of the can actually used had impaired the efforts to treat plaintiff and exacerbated her illness.

Having learned the full story of what occurred, plaintiff filed a motion for leave to amend. The proposed second amended complaint attached to the motion labeled the counts in question (proposed Counts IX and X) as "Intentional Spoilation of Evidence", no doubt referring to the destruction of the pesticide can containing labeled ingredients. The trial judge denied the motion on the grounds that the counts did not state a cause of action and were "legally

insufficient" under Arizona law. Plaintiff seeks relief, arguing that leave to amend shall be freely given and that the failure to allow such an amendment was arbitrary, capricious and an abuse of discretion.[2] See Rule 3, Ariz.R.P.Spec.Act., 17A A.R.S.

## DISCUSSION

### 1. Spoliation

■ The tort of intentional spoliation of evidence has been recognized by case law in California. *Smith v. Superior Court,* 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984). In *Smith* the plaintiff was injured when a wheel and tire from another vehicle crashed through her windshield. The vehicle which had lost the wheel was towed to the dealer who had sold it. The dealer agreed to retain the tire, wheel and other evidence for examination by plaintiff's experts. It later destroyed or lost the physical evidence, making it impossible for the experts to inspect the parts and determine what had happened. Plaintiff's lawsuit was seriously compromised by these actions.

Respondent argues that *Smith v. Superior Court* is inapposite to the case before us. We agree. Smith did not sue the tortfeasor for the physical injury which it had caused to her; instead, she sued for the damage done to her lawsuit by destruction of the evidence. In the case at bench, plaintiff seeks damages from the tortfeasor for the physical injuries which she sustained by reason of the actions of its employees. There is no need to invoke esoteric theories or recognize some new tort. It may be true that "for every wrong there is a remedy", *Smith,* 151 Cal.App.3d at 496, 198 Cal.Rptr. at 832, but we believe the remedy for the problem before us is well within the realm of existing tort law.

### 2. Duty

Assuming plaintiff's allegations are true, defendant certainly acted wrongfully. However, no wrong is actionable unless the putative defendant owed a duty to the party injured. *See, e.g., Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 706 P.2d 364 (1985); *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983); W. PROSSER & W. KEETON, THE LAW OF TORTS § 53 at 358 (5th ed. 1984). Was defendant under a duty to aid and assist the plaintiff?

Traditionally, tort law has been hesitant to impose a duty to render aid or assistance to those in peril. That reluctance is no doubt attributable to the historical distinction between action and nonaction, misfeasance and nonfeasance. W. PROSSER & W. KEETON, *supra,* § 56 at 373. Since nonfeasance was not actionable except in certain special relationships, the common law generally refused to impose a duty upon one person to give aid to another, no matter how serious the peril to the other and no matter how trifling the burden of coming to the rescue. *Id.* Thus, defendant might with impunity sit on the wharf, smoke his cigarette and refuse to throw his rope to a person drowning just below. *Osterlind v. Hill,* 263 Mass. 73, 160 N.E. 301 (1928). The law did not require us

> ... to play the part of Florence Nightingale and bind up the wounds of a stranger who is bleeding to death, or to prevent a neighbor's child from hammering on a dangerous explosive, or to remove a stone from the highway where it is menace to traffic, ... or even to cry a warning to one who is walking into the jaws of a dangerous machine. The remedy in such cases is left to the "higher law" and the "voice of conscience" which, in a wicked world, would seem to be singularly ineffective either to prevent the harm or to compensate the victim.

**2.** Count X pertained to the destruction of a note which plaintiff had written to the nonexistent pest control service and which had alleged evidentiary value. Evidently the original note was taken and destroyed by defendants' employees. However, copies were made and exist. Obviously, therefore, Count X raises nothing of importance and the trial judge did not abuse his discretion in denying leave to add Count X. We consider only the propriety of denying leave to add Count IX.

W. PROSSER & W. KEETON, *supra*, § 56 at 375 (citations omitted).

### 3. Limited Duty

■ Over the years, numerous exceptions have been made to the common law doctrine that there is no duty to assist those in peril. Among the exceptions are the duty of innkeepers and owners of real property to render assistance to guests or invitees. *See* Restatement (Second) of Torts § 314A (1965).[3] Arguably, these exceptions are applicable to the facts presented by the case at bench. Even more on point, however, is the principle that where the defendant created the danger the law imposes a duty to do what is reasonable to extricate the plaintiff.

> **Duty to Aid Another Harmed By Actor's Conduct**
>
> If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

Restatement § 322.

■ We formally adopt this as the law in Arizona, although the principles are not new and have been used previously in this state. *See Maldonado v. Southern Pacific Transportation Company*, 129 Ariz. 165, 168, 629 P.2d 1001, 1004 (App.1981). *Maldonado* applied § 322 to a situation in which it was alleged that defendant negligently jerked a train car, causing plaintiff to fall under the wheels and become severely injured. Defendant then refused to aid plaintiff and may have hindered those who came to his assistance. The court of appeals found that in the absence of prior case law, it would apply Restatement § 322. That situation is closely analogous to the one before us. In the present case, we need say only that because defendant

poisoned plaintiff it had a duty to minimize the resulting harm after it discovered what had occurred.

■ Thus, there is no need to recognize a new tort. Having caused or contributed to plaintiff's poisoning, defendant was under a duty to act reasonably to mitigate the resulting harm. Certainly, providing correct information as to the nature of the poison when requested by plaintiff and her doctors was well within the bounds of what could reasonably be expected, especially since defendant had that information at hand. In failing to provide it, and intentionally providing false information, defendant did not spoil the evidence, it caused a new or further injury to the plaintiff.[4]

### 4. Procedural Considerations

■ We hold, therefore, that plaintiff has stated a cause of action against defendant for the exacerbation of her injuries. We turn, then, to the procedural posture of this case. The cause of action which plaintiff pleaded in proposed Count IX properly describes the events, alleges that defendant wrongfully failed to render assistance and interfered with the help that plaintiff was getting from her physicians, with the result that plaintiff's physical condition was worsened, that plaintiff sustained further injuries and sustained property damage. Despite these allegations the caption which plaintiff affixed to proposed Count IX was "Intentional Spoilation of Evidence". That theory was neither pleaded nor appropriate. If the trial judge had stricken the caption or denied the proposed amended complaint as a whole on the grounds of prolixity, we would be reluctant to interfere, given the fact that plaintiff apparently sought to assert a fairly simple action in fifteen counts contained in a sixty-page amended complaint of over 88 factual paragraphs.

---

**3.** Restatement (Second) of Torts will be referred to as Restatement § ——.

**4.** Yet another principle of law may entitle plaintiff to relief if the facts alleged prove true. Even where the defendant is not responsible for

plaintiff's peril, when he assumes to act affirmatively, as by providing information to plaintiff's doctor, he assumes a duty of reasonable care. *See* W. PROSSER & W. KEETON, *supra*, § 56 at 378–79.

However, the trial court did allow the amendments, except for the allegations in Count IX, which he held were legally insufficient, citing *Home Insurance Co. v. Balfour-Guthrie Insurance Co.*, 13 Ariz.App. 327, 476 P.2d 533 (1971). That case holds that while leave to amend should be freely given, Rule 15(a), Ariz.R.Civ.P., 16 A.R.S., denial will be upheld when the "proffered amendment could not affect the outcome of the litigation, that is, when on its face it is legally insufficient." 13 Ariz.App. at 328, 476 P.2d at 534. Treating the caption as surplus, the actual allegations of Count IX are legally sufficient and could certainly affect the outcome of the action. Further, Rule 8(g), Ariz.R.Civ.P., 16 A.R.S., requires that pleadings be construed so as to do substantial justice. *See also Busy Bee Buffet, Inc. v. Ferrell*, 82 Ariz. 192, 310 P.2d 817 (1957) (mislabeled pleading will be considered as if properly labeled). The trial court having failed to note any valid reason that would support a ruling contrary to the liberal spirit of the rules favoring amendment, we find that his order as to proposed Count IX was an abuse of discretion. *Owen v. Superior Court*, 133 Ariz. 75, 80, 649 P.2d 278, 283 (1982).

The order on the motion for leave to amend is therefore modified so as to permit amendment by addition of proposed Count IX and the case is remanded for further proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.