214 P.3d 434

**Monica LIPS; Walter Lips, Plaintiffs/Appellants,**

v.

**SCOTTSDALE HEALTHCARE CORPORATION, an Arizona corporation, Defendant/Appellee.**

No. 1 CA–CV 08–0097.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 25, 2009.

Beus Gilbert PLLC by Leo R. Beus and Keith C. Ricker, Scottsdale, Attorneys for Plaintiffs/Appellants.

Kent & Wittekind PC by Richard A. Kent, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

THOMPSON, Judge.

¶ 1 Plaintiffs–Appellants Monica and Walter Lips appeal the trial court's order dismissing their claim for spoliation of evidence against defendant-appellee Scottsdale Healthcare Corporation. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In April 2004, Monica Lips underwent a total left hip replacement surgery at Scottsdale Healthcare's Osborn facility. During the procedure, Lips's surgeon implanted a hip prosthesis designed, manufactured, and distributed by Encore Medical Corporation and Encore Medical L.P. (collectively, Encore).[1]

¶ 3 The following year, Lips experienced instability in her left hip. A physical and x-ray examination indicated that the ceramic liner portion of Lips's hip prosthesis had failed and that surgery to revise the prosthesis was necessary to prevent further instability, damage to the prosthetic components, and/or pain. During the revision surgery, Lips's surgeon found multiple fragments of ceramic and replaced two portions of the hip prosthesis. A pathologist examined the portions of Lips's hip prosthesis removed during the procedure and diagnosed a "left hip failed prosthesis." Following the revision surgery, Scottsdale Healthcare lost or destroyed the explanted portions of the hip prosthesis despite Lips's request that Scottsdale Healthcare maintain those materials.

¶ 4 In August 2006, Lips filed a complaint against Encore alleging claims of products liability, negligence, and breach of warranty arising out of the failure of the original hip prosthesis. Thereafter, pursuant to the parties' stipulation, Lips filed an amended complaint alleging that Scottsdale Healthcare had "negligently or intentionally lost or otherwise destroyed or disposed of" the removed portions of the hip prosthesis. She alleged that the destruction of those materials constituted spoliation of evidence and, as a direct and proximate result, Lips's products liability case against Encore was compromised.

¶ 5 Scottsdale Healthcare moved to dismiss the complaint on the grounds that Lips had failed to state a claim upon which relief could be granted because Arizona does not recog-

1. The prosthesis consisted of five separate products: a flared shell for the ceramic liner, a ce- ramic liner, one screw, a hip stem, and a ceramic femoral head.

nize a claim for spoliation of evidence.[2] Lips opposed the motion, arguing that Arizona law requires courts to evaluate causes of action for spoliation on a case-by-case basis and that the allegations in this case justified allowing the claim. The trial court granted the motion, stating that it was clear from the authority cited by Lips that Arizona does not recognize a separate tort of spoliation. The trial court also expressed concern that Lips's claimed damage—harm to her lawsuit against Encore—would be purely speculative and noted that Lips had other ample means to establish the failure of Encore's prosthetic device.

¶ 6 The trial court entered judgment for Scottsdale Healthcare, including a determination of finality pursuant to Arizona Rule of Civil Procedure 54(b). Lips timely appealed.

## DISCUSSION

¶ 7 Lips argues on appeal that Arizona should recognize a cause of action for intentional and/or negligent spoliation of evidence and urges this court to find that she adequately pled such a claim against Scottsdale Healthcare. In addition, she contends that she adequately pled a cause of action for negligence and/or prima facie tort against Scottsdale Healthcare.

¶ 8 In reviewing a grant of a motion to dismiss a complaint, we assume the facts alleged in the complaint to be true and give the plaintiff the benefit of all inferences arising from those facts. *Capitol Indem. Corp. v. Fleming*, 203 Ariz. 589, 590, ¶ 2, 58 P.3d 965, 966 (App.2002). We will uphold the dismissal only if the plaintiff is not entitled to relief "under any facts susceptible of proof under the claims stated." *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984).

### A. Spoliation

¶ 9 Spoliation is defined as " '[t]he intentional destruction of evidence.... The destruction, or the significant and meaningful alteration of a document or instrument.' "

*Smyser v. City of Peoria*, 215 Ariz. 428, 438 n. 11, ¶ 32, 160 P.3d 1186, 1196 n. 11 (App. 2007) (quoting Black's Law Dictionary 1257 (6th ed.1990) ). Where permitted, a claim for spoliation may be asserted by one party to an action against the opposing party (first-party spoliation) or against a stranger to the litigation (third-party spoliation). *See Cedars–Sinai Medical Center v. Superior Court*, 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511, 521 n. 4 (1998).

¶ 10 The Arizona Supreme Court declined to recognize a cause of action for first-party spoliation in *La Raia v. Superior Court*, 150 Ariz. 118, 722 P.2d 286 (1986). In that case, the plaintiff became ill after her landlord sprayed toxic pesticide not approved for indoor use in her apartment. *Id.* at 119–20, 722 P.2d at 287–88. After she was hospitalized, her physicians contacted the landlord to determine which pesticide had been used to spray the apartment so they could administer appropriate treatment to plaintiff. *Id.* at 120, 722 P.2d at 288. The landlord falsely told the physicians that a pesticide approved for indoor use had been sprayed and destroyed the actual pesticide sprayed in the apartment. *Id.* After plaintiff sued the landlord for negligence, she learned of the false information provided to the hospital and the destruction of the pesticide. *Id.* She sought leave to amend her complaint to add a claim for intentional spoliation of evidence. *Id.*

¶ 11 The Arizona Supreme Court noted that the California Court of Appeal had recognized the tort of intentional spoliation of evidence in *Smith v. Superior Court*, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984), *overruled by Temple Cmty. Hosp. v. Superior Court*, 20 Cal.4th 464, 84 Cal.Rptr.2d 852, 976 P.2d 223 (1999). *La Raia*, 150 Ariz. at 121, 722 P.2d at 289. However, the court distinguished *Smith* on the basis that the alleged spoliator in that case was not the tortfeasor who had caused the plaintiff's physical injuries, whereas the plaintiff in *La Raia* sought tort damages from the landlord—the alleged spoliator—for the physical

---

2. Scottsdale Healthcare also argued that Arizona's medical malpractice statutes do not authorize a claim against a healthcare provider for destruction of explanted medical devices. Lips responded that her claims were not subject to the requirements of Arizona's medical malpractice statutes because the complaint contained no allegations of medical negligence.

injuries she sustained from the toxic pesticide. *Id.* The court wrote: "[t]here is no need to invoke esoteric theories or recognize some new tort.... [W]e believe the remedy for the problem before us is well within the realm of existing tort law." *Id.* Relying on the principle that one who has caused bodily harm to another has a duty to exercise reasonable care to prevent further harm, the court stated that, by failing to provide information regarding the pesticide and by intentionally providing false information, the landlord did not spoil the evidence but caused a new or further injury to plaintiff by impeding her medical treatment. *Id.* at 122, 722 P.2d at 290. The court thus declined to recognize a cause of action for spoliation of evidence but found that plaintiff had stated a claim for negligence under existing Arizona law for the exacerbation of her injuries. *Id.*

¶ 12 Since the Arizona Supreme Court's decision in *La Raia,* we repeatedly have noted that Arizona does not recognize a claim for first-party spoliation of evidence. *E.g., Tobel v. Travelers Ins. Co.,* 195 Ariz. 363, 371 n. 6, ¶¶ 42–43, 988 P.2d 148, 156 n. 6 (App. 1999) (holding trial court did not abuse its discretion in denying plaintiff's motion to amend to add a claim for first-party spoliation; Arizona has not recognized such a claim and there was no evidence the defendant acted in bad faith); *Souza v. Fred Carries Contracts, Inc.,* 191 Ariz. 247, 249 n. 1, 955 P.2d 3, 5 n. 1 (App.1997) (noting that "Arizona does not recognize a separate tort of spoliation of evidence"). We have instead evaluated allegations of first-party spoliation to determine whether the alleged spoliator should be subject to litigation sanctions. *See, e.g., Strawberry Water Co. v. Paulsen,* 220 Ariz. 401, 411, ¶ 30, 207 P.3d 654, 664 (App.2008) (holding trial court did not abuse its discretion by refusing to instruct the jury that it could infer that evidence destroyed by the plaintiff would have been adverse to it); *Smyser,* 215 Ariz. at 440, ¶ 38, 160 P.3d at 1198 (holding trial court did not err by refusing to give the jury an adverse inference instruction). We have not confronted the question presented by this appeal: whether

Arizona should recognize a claim for third-party spoliation.

**1.  Intentional Spoliation**

██  ¶ 13 Lips argues that, because the court in *La Raia* did not address damage to a lawsuit arising out of the destruction of evidence (third-party spoliation), that decision does not preclude us from recognizing a spoliation cause of action based on Scottsdale Healthcare's actions. She urges us to follow other jurisdictions that have recognized a claim for third-party intentional spoliation of evidence. In particular, Lips cites *Coleman v. Eddy Potash, Inc.,* 120 N.M. 645, 905 P.2d 185 (1995), *overruled in part on other grounds by Delgado v. Phelps Dodge Chino, Inc.,* 131 N.M. 272, 34 P.3d 1148 (2001), and *Oliver v. Stimson Lumber Company,* 297 Mont. 336, 993 P.2d 11 (1999), in which the New Mexico Supreme Court and the Montana Supreme Court, respectively, recognized a cause of action for third-party intentional spoliation of evidence.

¶ 14 In *Coleman,* the plaintiff suffered serious injuries when a vertical lift she was riding at work malfunctioned. 905 P.2d at 187. The plaintiff's employer, the defendant Eddy Potash, then disassembled and replaced the lift, after which time certain parts of the original lift were missing. *Id.* The plaintiff sued a number of corporations involved in the manufacture, distribution, inspection, or servicing of the lift. *Id.* She also asserted claims for negligent and intentional spoliation of evidence against Eddy Potash, alleging that the loss of parts of the lift prejudiced her ability to recover against the other corporations. *Id.* The New Mexico Supreme Court recognized a claim for intentional spoliation of evidence, writing, "the intentional destruction of potential evidence in order to disrupt or defeat another person's right of recovery is highly improper and cannot be justified." *Id.* at 189.[3] The court held that, to prevail on such a claim, a plaintiff must allege and prove:

(1) The existence of a potential lawsuit;

---

**3.**  The court refused to recognize a cause of action for negligent spoliation of evidence. *Cole-*   *man,* 905 P.2d at 190.

(2) The defendant's knowledge of the potential lawsuit;

(3) The destruction, mutilation, or significant alteration of potential evidence;

(4) Intent on part of the defendant to disrupt or defeat the lawsuit;

(5) A causal relationship between the act of spoliation and the inability to prove the lawsuit; and

(6) Damages.

*Id.* The court adopted the tort of spoliation "in concurrence with" its earlier recognition of the claim of prima facie tort and articulation of the principle that New Mexico "traditionally afford[s] relief for wrongs intentionally and maliciously committed." *Id.* (quoting *Schmitz v. Smentowski,* 109 N.M. 386, 785 P.2d 726, 736 (1990)).

¶ 15 The Montana Supreme Court in *Oliver* recognized the tort of third-party intentional spoliation and adopted the elements set forth in *Coleman. Oliver,* 993 P.2d at 19–20.[4] In addition, it held that, in order to prove causation in such a case, a plaintiff is required to show:

(1) The underlying claim was significantly impaired due to the spoliation of evidence;

(2) A causal relationship exists between the projected failure of success in the underlying action and the unavailability of the destroyed evidence; and

(3) The underlying action would enjoy a significant possibility of success if the spoliated evidence still existed.

*Id.* at 21. The court distinguished first-party spoliation claims, noting that remedies already exist for parties to an action who have suffered a loss as the result of spoliation by another party. *Id.* at 17–18. It reasoned that, because such sanctions are not available when a third party has spoiled evidence and because of the critical importance of evidence preservation in the civil justice system, it is necessary to recognize the tort of third-party spoliation of evidence. *Id.* It wrote that such

a claim should "serve as a deterrent to any potential spoiler and provide suitable punishment against an actual spoliator as well as fair compensation to the victim of spoliation without creating a windfall." *Id.* at 18.[5]

¶ 16 The Montana Supreme Court and the New Mexico Supreme Court both cited the California Court of Appeal's decision in *Smith,* in which the court became the first jurisdiction to recognize a cause of action for first-party spoliation. *Coleman,* 905 P.2d at 188; *Oliver,* 993 P.2d at 18. However, the Supreme Court of California has overruled *Smith* and held that California will not recognize a cause of action for intentional spoliation of evidence. *See Temple,* 84 Cal.Rptr.2d 852, 976 P.2d 223.

¶ 17 In *Cedars–Sinai,* the plaintiff, a child injured during birth, alleged that the defendant hospital had intentionally destroyed evidence relevant to his malpractice action against it. 74 Cal.Rptr.2d 248, 954 P.2d at 512. In rejecting the plaintiff's spoliation claim as a matter of law, the court ruled that it was preferable to rely on existing non-tort remedies, rather than create a tort remedy. *Id.* The court found that a spoliation claim would be inconsistent with the general principle that bars tort remedies for litigation-related misconduct, such as perjury or the concealment of evidence, and the related prohibition against attacking adjudications on the grounds that evidence presented was falsified or destroyed. *Id.* at 514–18. It noted that several non-tort remedies exist to punish and deter spoliation, including an evidentiary inference that destroyed evidence was unfavorable to the destroying party, discovery sanctions, disciplinary sanctions against attorneys, and criminal penalties. *Id.* at 516–19. The court also expressed concern that, in most cases of spoliation, it would be difficult to determine whether the plaintiff had been damaged by the destruction of evidence because the jury could only speculate as to

---

4. The court ruled, however, that because the plaintiffs had not presented any facts that indicated the defendant destroyed evidence for the purpose of disrupting plaintiffs' lawsuit, summary judgment for defendant was appropriate. *Oliver,* 993 P.2d at 22.

5. The Montana and New Mexico courts are joined only by the Alaska and Ohio courts in recognizing a claim for third-party intentional spoliation of evidence; numerous other states have rejected the claim. *See Dowdle Butane Gas Co., Inc. v. Moore,* 831 So.2d 1124, 1129–33, ¶¶ 14, 20 (Miss.2002).

the nature of the evidence and the effect it might have had on the outcome of the underlying action. *Id.* at 518–20. Finally, the court worried that the costs of defending spoliation claims would cause parties to "take extraordinary measures to preserve for an indefinite period documents and things of no apparent value solely to avoid the possibility of spoliation liability if years later those items turn out to have some potential relevance to future litigation." *Id.* at 519. The court concluded that whatever additional benefits a tort remedy might create in ensuring that the issues in underlying litigations are fairly decided were outweighed by these policy considerations. *Id.* at 521.

¶ 18 The following year, in *Temple,* the Supreme Court of California applied a similar analysis to determine that it would not recognize a cause of action for third-party intentional spoliation. 84 Cal.Rptr.2d 852, 976 P.2d at 229–33. In that case, the plaintiff was severely burned during surgery when an electrocautery tool caused oxygen in the anesthesia to ignite. *Id.* at 225. Immediately thereafter, the plaintiff's counsel requested that the hospital and physicians retain the cautery instrument and any other relevant evidence. *Id.* The hospital refused to allow the plaintiff to inspect the equipment. *Id.* In her claim for intentional spoliation of evidence against the hospital, the plaintiff alleged that the hospital knew that evidence such as the cautery tool and oxygen mask might be relevant to the plaintiff's potential products liability litigation against the manufacturer of the devices and that the hospital intentionally disposed of or concealed the evidence to deprive the plaintiff of her opportunity to establish her products liability claims. *Id.* at 226.[6]

¶ 19 The court stated that many of the considerations it discussed in *Cedars–Sinai* guided it to conclude that California should not recognize a claim for intentional spoliation of evidence by a third party. *Id.* at 228. It again acknowledged the general principle against expanding tort liability to include litigation-related misconduct and wrote that the goal of having a dispute resolved in a single proceeding would be undermined if a disappointed litigant were afforded a second opportunity to seek the compensation it sought in the original lawsuit. *Id.* at 228–29. The court noted that, even if a spoliation claim were tried concurrently with the underlying lawsuit, a significant potential for jury confusion and inconsistency would exist. *Id.* at 229. In addition, it reasoned that the uncertainty of the fact of harm is equally applicable in the case of a third-party spoliation claim as in that of a first-party claim. *Id.* at 230–31. The court explained that the burdens and costs of recognizing a remedy for third-party spoliation would be considerable, and perhaps greater than in the case of first-party spoliation, because the class of potential plaintiffs and defendants is greatly expanded. *Id.* at 231–32. Finally, the court acknowledged that, although the full panoply of sanctions available within litigation to deter or punish first-party spoliation is not available in a third-party case, a third-party spoliator may nevertheless be punished through discovery sanctions for abuse of the discovery process. *Id.* at 232. The court concluded that the benefits of recognizing a claim for third-party intentional spoliation were outweighed by the "burden to litigants, witnesses, and the judicial system that would be imposed by potentially endless litigation over a speculative loss, and by the cost to society of promoting onerous record and evidence retention policies." *Id.* at 233.

¶ 20 Arizona has never recognized a tort of spoliation of evidence. States that do recognize such a tort have requirements that are not met in this case. Here, there is no evidence that defendant intended to disrupt or defeat plaintiff's lawsuit by failing to preserve the explanted portions of the hip prosthesis. We therefore hold that Scottsdale Healthcare was entitled to summary judgment on plaintiff's claim for third-party intentional spoliation of evidence.

### 2. Negligent Spoliation

██ ¶ 21 Lips also asks us to recognize a claim for third-party negligent spoliation of

6. The plaintiff also alleged that the hospital had destroyed or suppressed evidence relevant to her claims against it. *Temple,* 84 Cal.Rptr.2d 852, 976 P.2d at 227. The court ruled that that portion of the claim was barred by its decision in *Cedars–Sinai. Id.*

evidence.[7]  This issue was not raised in either *Cedars–Sinai* or *Temple*, and the Supreme Court of California did not address it. *Id.* at 228.  The California Court of Appeal subsequently ruled that California will not recognize a cause of action for negligent spoliation of evidence, holding that it would be anomalous to impose tort liability upon a negligent spoliator while denying liability against the more egregious conduct of an intentional spoliator.  *Lueter v. State of California*, 94 Cal.App.4th 1285, 115 Cal.Rptr.2d 68, 76 (2002).  The court also noted that recognizing a negligent spoliation tort would effectively abrogate the holdings of *Cedars–Sinai* and *Temple* because most intentional conduct may also be characterized as negligent.  *Id.* We agree with this analysis and decline to adopt a cause of action for negligent spoliation of evidence.

## B.  Negligence/Prima Facie Tort

¶ 22  Finally, Lips argues that the trial court erred in dismissing her complaint because she stated claims for both negligence and prima facie tort.[8]  In her first amended complaint, Lips included a new claim against Scottsdale Healthcare for "Destruction/Spoliation of Evidence."  Lips alleged that Scottsdale Healthcare owed her a duty to maintain and preserve the medical devices explanted during her revision surgery in its facility.  She alleged that she specifically informed Scottsdale Healthcare of this duty and requested that it preserve the explanted portions of Lips's hip prosthesis.  She asserted that sometime thereafter, Scottsdale Healthcare breached this duty and negligently or intentionally lost or otherwise destroyed or disposed of the prosthesis and, as a direct and proximate result, compromised her products liability action against Encore.

¶ 23  Scottsdale Healthcare moved to dismiss the first amended complaint on the grounds that Arizona does not recognize the tort of spoliation of evidence.  It also argued that Arizona's medical malpractice statutes did not authorize a claim against a healthcare provider for destruction of explanted medical devices.  Lips responded by arguing that, under Arizona law, a cause of action for spoliation must be evaluated on a case-by-case basis and that the facts pleaded in the first amended complaint justified a claim for spoliation.  In addition, she asserted that her claims were not subject to the requirements of Arizona's medical malpractice statutes because the complaint contained no allegations of medical negligence.  Lips did not argue that her first amended complaint stated a claim for either negligence or prima facie tort and did not urge the trial court to deny Scottsdale Healthcare's motion to dismiss on that basis.

¶ 24  Scottsdale Healthcare argues on appeal that, by failing to assert in the trial court that she had stated a claim for negligence and/or prima facie tort, Lips waived this argument and may not advance it on appeal.  In response, Lips contends that she did raise the issue in the trial court by pleading the elements of negligence and prima facie tort in her first amended complaint and by arguing in her response to the motion to dismiss each element of negligence and prima facie tort.  We determine that, because Lips never asserted in the trial court that she pled claims for negligence and/or prima facie tort in her first amended complaint, she may not raise that issue for the first time on appeal.  *Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct

---

**7.** The New Mexico Supreme Court in *Coleman* refused to recognize a cause of action for negligent spoliation of evidence, concluding that adequate remedies exist under traditional negligence principles to redress such destruction of potential evidence. 905 P.2d at 190. The Montana Supreme Court in *Oliver* did recognize the claim. 993 P.2d at 19–20.

**8.** The prima facie tort is described by the Restatement (Second) of Torts § 870 (1979) as: "One who intentionally causes injury to another

is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability." Arizona has not adopted this principle. *See Rutledge v. Phoenix Newspapers, Inc.*, 148 Ariz. 555, 558, 715 P.2d 1243, 1246 (App. 1986), *overruled on other grounds by Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781 (1989).

any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal."). We express no opinion regarding whether Lips's allegations would be sufficient to state a claim for negligence or prima facie tort.

## CONCLUSION

¶ 25 For the foregoing reasons, we affirm.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and PETER B. SWANN, Judge.