JOHNSEN,
Judge, dissenting:
¶ 22 I respectfully dissent. My view is that under duty principles already established in Arizona, if the Ciccarellis’ default authorized the lender to enter the home and change the locks, they owed a duty to take reasonable steps to prevent resulting personal injury to the locksmith the lender sent to do that.
¶ 23 As the Majority states, although a landlord who has leased the entirety of the property usually has no duty as landowner to one who comes onto the land, that does not mean the landowner necessarily owes no other duty to the entrant. It only means that no “categorical relationship” imposes such a duty. See supra ¶ 7. As our supreme court has held, in the absence of any such categorical relationship, an actor can by his conduct create another relationship that may impose on him a duty of care. Gipson v. Kasey, 214 Ariz. 141, 145, ¶ 18, 150 P.3d 228 (2007).
¶ 24 Alcombrack argues that such a duty arose when the Ciccarellis defaulted on their loan, thereby empowering their lender to enter the home and change the locks. Under his theory, the Ciccarellis are liable for injuries caused when their tenant, a bail bondsman who wore a bullet-proof vest for protection, mistook Alcombrack for a home invader and shot him.
¶25 Normally, as the Ciccarellis contend in their “nonfeasance” argument, one has no duty to protect another who is at risk of harm. See La Raia v. Superior Court, 150 Ariz. 118, 121, 722 P.2d 286 (1986) (“common law generally refused to impose a duty upon one person to give aid to another, no matter how serious the peril to the other and no matter how trifling the burden of coming to the rescue”); see Restatement Second § 314 cmt. c (“one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him”). This is the normal rule “irrespective of the gravity of the danger to which the other is subjected and the insignificance of the trouble, effort, or expense of giving him aid or protection.” Id.
¶ 26 But the rule may be different when the actor has created the risk of harm. “In general, every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others.” Nunez v. Prof'l Transit Mgmt. of Tucson, Inc., 229 Ariz. 117, 121, ¶ 17, 271 P.3d 1104 (2012) (quotation omitted). When someone has done something “and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.” Restatement Second § 321(1) (1965).
¶ 27 In La Raia, our supreme court adopted this principle in holding that an actor who has done something that renders another helpless and in danger has a duty to prevent further harm to the other. In that *546 case, a landlord inadvertently used a pesticide that poisoned a tenant, then lied about the chemical it had used, causing the tenant’s medical problems to go untreated. The supreme court analyzed whether, having endangered the tenant in the first place, the landlord could be sued for failing “to minimize the resulting harm after it discovered what had occurred.” 150 Ariz. at 122, 722 P.2d 286. The court adopted Restatement (Second) of Torts § 322 (1965):
If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.
The applicable principle, the La Raia court said, is “where the defendant created the danger the law imposes a duty to do what is reasonable to extricate the plaintiff.” Id. (citing Maldonado v. Southern Pac. Transp. Co., 129 Ariz. 165, 629 P.2d 1001 (App.1981)) (applying Restatement Second § 322).
¶ 28 Restatement (Second) of Torts § 321 (1965) imposes the same duty in a situation in which an actor has created a risk of physical harm to another:
(1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.
(2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.
The duty imposed by this section applies regardless of “whether the original act is tortious or innocent.” Restatement Second § 321, cmt. a.
¶ 29 Absent controlling Arizona law to the contrary, an Arizona court generally follows the Restatement. See In re Krohn, 203 Ariz. 205, 210, ¶ 18, 52 P.3d 774 (2002). Neither the Cicearellis nor, in my view, the Majority, offer a compelling reason why this court should not follow that general rale and adopt Restatement Second § 321 in this case.[12]
¶ 30 In the first place, § 321 follows from the same principle that underlies § 322: Both provide that, as La Raia put it, when an actor has “created the danger” to another, the actor has a duty to act reasonably to prevent harm. Section 322 applies when an actor has caused bodily harm to another who has been rendered helpless; in that situation, the actor must exercise care to prevent further harm. Section 321 applies when an actor realizes that he has created an unreasonable risk of bodily harm; in that situation, the actor must exercise care to prevent the risk from taking effect.
¶31 Moreover, both § 322 and § 321 are grounded in a principle our supreme court announced more than 30 years ago: “[Ejvery person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others.” Ontiveros v. Borak, 136 Ariz. 500, 509, 667 P.2d 200 (1983). The Majority notes that no Arizona case has adopted § 321 even though it was promulgated more than 50 years ago. But given that no Arizona case has rejected the provision over that same period, the most that can be said about the omission is that it simply hasn’t come up before now.[13]
¶ 32 The Majority cites cases from elsewhere criticizing § 321 and concludes that *547 provision is impermissibly based on foreseeability. Supra ¶ 20; see Gipson, 214 Ariz. at 144, ¶ 15, 150 P.3d 228. But the Connecticut case that is the centerpiece of that discussion, Murillo, merely held that public policy may limit the scope of a duty otherwise imposed under § 321.[14] Arizona courts likewise have recognized that public policy may limit application of general duty principles in some circumstances. Under these authorities, however, public policy does not bar every application of the general duty rule. In Guerra v. State, 237 Ariz. 183, 348 P.3d 423 (2015), for example, our supreme court noted that although prior Arizona decisions had applied Restatement (Second) of Torts § 323 (duty of reasonable care of one who renders certain services to another), for reasons of public policy, the court would not apply that rule to law enforcement personnel when they notify next-of-kin. 237 Ariz. at 187, ¶ 20, 348 P.3d 423 (“policy considerations may militate against finding a duty in certain contexts”). See Espinoza v. Schulenburg, 212 Ariz. 215, 217, ¶¶ 9, 11, 129 P.3d 937 (2006) (expressly adopting “rescue doctrine” as stated in Restatement (Third) of Torts § 32 but holding that, for policy reasons, that duty rule did not apply to public safety employees injured on the job). There is no public policy asserted for why the duty rule stated in § 321 should not apply here.[15]
¶ 33 In the superior court and again on appeal, Alcombraek argues Restatement Third § 7 imposed a duty on the Cicearellis to take steps to protect someone the lender might send to change the locks on the home. As in Gipson and the other cases the Majority cites, however, this court need not decide here whether to adopt Restatement Third § 7. As applied to the allegations of the complaint in this case, Restatement Second § 321 imposed a duty on the Cicearellis to act reasonably to prevent physical harm to Alcombraek.
¶ 34 Alcombraek argues the duty at issue arose when the Cicearellis defaulted on their loan because their deed of trust expressly authorized the lender upon default to send someone like him to change the locks.[16] The Cicearellis, however, argue they cannot be responsible because the trustee lacked the power under Arizona law to change the locks on the home after their default. Citing Restatement (Third) of Property (Mortgages) § 4.1 (1997), the Cicearellis contend the provision in the deed of trust upon which Alcombraek relies is unenforceable under Arizona law. The relevant Restatement provision states:
(a) A mortgage creates only a security interest in real estate and confers no right to possession of that real estate on the mortgagee.
(b) Any agreement, whether in a mortgage or not, that grants the mortgagee, as mortgagee, the right to possession in the future is unenforceable, except as provided in § 3.1(e).
Restatement (Third) of Property (Mortgag *548 es) § 4.1.[17]
¶ 35 Although, as stated, Arizona courts usually follow the Restatement, we do not do so when it conflicts with a relevant statute or case law. See In re Estate of Reynolds, 235 Ariz. 80, 83, ¶ 12, 327 P.3d 213 (App.2014). Under Arizona law, the parties to a mortgage may by contract agree to allow the mortgagee a right of possession. See A.R.S. § 33-703 (2015) (“A mortgage is a lien upon everything that would pass by a grant of the property, but does not entitle the mortgagee to possession of the property unless authorized by the express terms of the mortgage.”) (emphasis added). Although § 33-703 on its face applies to mortgages rather than deeds of trust, there is no apparent reason why the principle underlying the statute likewise would not apply to deeds of trust. For that reason, I would decline to follow Restatement (Third) of Property (Mortgages) § 4.1 and hold instead that a trustee is not barred as a matter of law from entering the property when the deed of trust permits it to do so.
¶ 36 For these reasons, I would reverse the summary judgment and remand for a trial on Aleombrack’s negligence claim against the Ciccarellis. At that point, the jury would be tasked to decide whether, applying the appropriate principles of law, the Ciccarellis breached a duty to Aleombrack and whether they should be liable for his injuries.

. The Majority believes Alcombrack waived any argument in favor of Restatement Second § 321 by failing to cite that provision in his opening or reply briefs. Supra ¶ 15. Instead, Alcombrack urged this court to adopt Restatement Third § 7, which the Majority believes to be a wide analytical leap from existing Arizona common law. We sought and received supplemental briefing about whether to adopt Restatement Second § 321, a 50-year-old provision that is considerably more limited in scope than Restatement Third § 7. Under the circumstances, if we decline to adopt Restatement Third § 7, I do not believe waiver precludes us from considering whether to adopt Restatement Second § 321 instead.

. The Cicearellis argue this court rejected Restatement Second § 321 in Parish v. Truman, 124 Ariz. 228, 603 P.2d 120 (App.1979). But we did not reject Section 321 in that case; we determined it was not relevant because there was no evidence the defendant knew of the risk he allegedly had created to the plaintiff. Id. at 230, 603 P.2d 120.

. At issue in Murillo was a claim by a woman who fainted in a hospital emergency room after she saw medical personnel struggling to insert an IV into her sister's arm. 823 A.2d at 1204. It is no surprise that the court in that case held the emergency medical technician and nurse that the bystander sued had no duty to the plaintiff. The court held that, as a matter of public policy, medical personnel should be encouraged to devote their full attention to their patients, not to bystanders. Id. at 1206. In any event, and for the record, other jurisdictions have adopted § 321. See Parnell v. Peak Oilfield Sendee Co., 174 P.3d 757 (Alaska 2007); Courtney v. Courtney, 186 W.Va. 597, 413 S.E.2d418 (1991).

. See A.R.S. § 33-1331 (2015) (requiring landlord to give tenant notice of foreclosure and allowing a tenant who does not receive such notice to sue for damages). That statute was adopted in 2013 and so was not in effect at the time relevant here, but it decisively rebuts any possible contention that public policy precludes application of § 321 to a landlord whose loan documents allow the lender to enter the property and change the locks upon default.

.The deed of trust provided that upon the borrower's breach, "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including ... securing and/ or repairing the Property.” It further stated, "Securing the Property includes, but is not limited to, entering the Property to make repairs [and] change locks." Whether it was "reasonable or appropriate” for the lender to change the locks on the home under the circumstances presented here is not before us.

. Section 3.1(c) of Restatement (Third) of Property (Mortgages), which restricts the authority of a mortgagee to limit the mortgagor’s power to redeem, is not relevant here.